# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THEODORE SWAIN, <br><br> Petitioner, <br><br> vs. <br><br> JEFFREY BEARD, Secretary,[1] <br><br> Respondent. | Civil No.  11cv1086 H (PCL) <br><br> **REPORT AND RECOMMENDATION RE DENIAL OF PETITION FOR WRIT OF HABEAS CORPUS** |

## I. INTRODUCTION

Petitioner Theodore Swain, a state prisoner proceeding pro se, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Petition), challenging his convictions in San Diego County Superior Court case number SCD199072 for several counts of securities fraud, grand theft and operating fraudulent securities schemes. (Pet.

---

[1]  Matthew Cate is no longer the Secretary of the California Department of Corrections and Rehabilitation; rather, Jeffrey Beard has recently been appointed Secretary of that agency. The Court therefore substitutes "Jeffrey Beard" as Respondent in place of "Matthew Cate." *See* FED. R. CIV. P. 25(d)(1) ("When a public official is a party to an action in his official capacity and during its pendency dies, resigns, or otherwise ceases to hold office, the action does not abate and the officer's successor is automatically substituted as a party.")

at 1-2, ECF No. 1.[2]) For the reasons set forth below, the Court recommends the Petition be **DENIED**.

## II.    FACTUAL BACKGROUND

This Court gives deference to state court findings of fact and presumes them to be correct; Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1) (West 2006); *see also Parke v. Raley*, 506 U.S. 20, 35-36 (1992) (holding findings of historical fact, including inferences properly drawn from these facts, are entitled to statutory presumption of correctness). The following facts are taken from the California Court of Appeal opinion:

> In 2002, Theodore Swain founded First Fidelity Assurance Company (First Fidelity) to raise money for real estate development projects. Swain testified at trial that as First Fidelity's president, he established different development funds for different construction projects and sought investors for each development fund. Specifically, he established La Honda Project, Inc.; SoCal Development Fund LLC; New Mexico Development Fund LLC; Southwest Development Fund; and Southwest, El Segundo Fund. He mailed flyers advertising the projects to prospective investors and to those who responded, a packet including a prospectus describing a particular project, a subscription agreement and a First Fidelity business card. The prospectuses stated the investors would receive "investment mortgage certificates," which were promissory notes identifying an ownership share or ownership interest and were secured by a first trust deed or warranty deed on real property that First Fidelity held.

> Several individuals returned completed subscription agreements specifying the amount of their proposed investment in a particular development project to First Fidelity, which issued them mortgage certificates identifying their investment in a specific project, the investment amount, the interest rate, and the accrual date.

> In approximately 2003, Swain started the La Honda project to build five detached homes in Escondido, California, but the homes were not built because of problems obtaining permits and a City of Escondido moratorium on construction due to water unavailability. In 2004, Swain started the SoCal Development Fund, LLC to build condominiums and a duplex in the area around Lake Elsinore, California, but construction of that project never started. Swain sold securities classified as series A, B, and C, for the Southwest El Segundo Fund to build 139 dwelling units in Deming, New Mexico. The securities were differently classified based on the different time periods before they became redeemable; they yielded higher interest rates the longer the investment period. Only two model homes were completed.

---

[2] For ease of reference, the Court will use the page numbers assigned by the Court's electronic filing system.

Swain testified he did not disclose to investors, either in the prospectuses or otherwise, his previous bankruptcy and three prior convictions for grand theft based on his prior real estate dealings. He explained he had never seen that kind of information disclosed in prospectuses. Swain sent the investors a quarterly newsletter, but never notified them of construction delays.

In 2006, Swain was served a cease and desist order to stop offering or selling securities. He was arrested in 2006.

Sue Tankersley, a certified fraud examiner, performed a forensic accounting of First Fidelity's records and testified that from 2002 through 2006, approximately 100 individuals invested approximately $7,589,496 in all First Fidelity accounts, and they lost approximately $6,600,838. Approximately 90 percent of investors incurred significant losses. She opined, "First Fidelity and its related companies operated as a Ponzi scheme. It is clear to me that that [sic] is what was going on here, that the only money brought in to this company was brought in by investors; the only money paid out to investors was from other investor money."

The prosecutor argued to the jury that Swain operated a Ponzi scheme by using some investors' money to pay off other investors. Swain made material misrepresentations or omissions to investors by failing to disclose his prior grand theft convictions and his bankruptcy. He misrepresented both that First Fidelity derived profits from other than investor money and the mortgage certificates were secured by first trust deeds to real property that First Fidelity held.

Defense counsel argued that Swain never intended to defraud the investors or steal from them. Rather, Swain did not disclose his bankruptcy or his prior convictions because it was not material, as successful people often have bankruptcies for various reasons before becoming successful. Furthermore, it is "very rare" for a company president to include those topics in prospectuses. Defense counsel added that the investors did not regard any misrepresentations or omissions Swain made as material at the relevant time, which was when they made their investments, but only after their investments failed. Defense counsel argued Swain lacked the intent to operate a Ponzi scheme because Swain had not made windfall profits. He argued: "Ladies and gentlemen, in a Ponzi scheme, why? The question is, why would you spend so much effort developing this property if *your only intent is to derive income and take the money from investors*?" (Emphasis added.)

(Resp't Lodgment No. 6 at 2-5.)

## III.  PROCEDURAL BACKGROUND

Petitioner was convicted in San Diego Superior Court, after jury trial, of fifteen counts of selling securities by misrepresentation or omission of a material fact (Cal. Corp. Code §§25401, 25540(b)), six counts of engaging in a fraudulent securities scheme (Cal. Corp. Code §§ 25541, 25540 (a)), and eight counts of grand theft (Cal. Penal Code §

487(a)). The jury also found that three of the thefts were committed against elders (Cal. Penal Code § 368(d)) and that Swain engaged in a pattern of related felony conduct involving the taking of more than $100,000, $500,000 and $2,500,000, respectively. (Cal. Penal Code § 186.11(a)(2)), and § 12022.6(a)(4)). (Resp't Lodgment No. 1, vol. 1 at 164-195; *see also id.* vol. 2 at 442-45.) Petitioner was sentenced to 24 years in prison. (*Id.*, vol. 2 at 442-45.)

Petitioner appealed his conviction to the California Court of Appeal. (Resp't Lodgment No 3.) Among other things, Swain argued the trial court erred in failing to give unanimity instructions to the jurors and improperly imposing multiple punishments. (*See* Resp't Lodgment No. 3.) On October 27, 2009, the appellate court affirmed the conviction in an unpublished opinion. (Resp't Lodgment No. 6.) On December 3, 2009, Swain filed a petition for review in the California Supreme Court (Resp't Lodgment No. 7) in which he again raised the instructional and sentencing claims. (*Id.*) The Court denied the petition without comment or citation on January 13, 2010. (Resp't Lodgment No. 8.)

Swain then filed a petition for writ of habeas corpus in San Diego Superior Court in which he argued the trial court committed instructional error and that he received ineffective assistance of trial counsel. (Resp't Lodgment No. 9, Ex. 1-5.) The petition was denied in a reasoned decision on June 24, 2010. (*See id.*)

On May 5, 2011, Swain filed a petition for habeas corpus in the court of appeal. In it, he raised the several claims not previously presented to the state courts: the jury was misinstructed on the elements of the securities offenses; he received ineffective assistance of appellate counsel; outrageous government misconduct rendered his trial fundamentally unfair; and he is actually innocent. (*See* Resp't Lodgment No. 9.) He also again alleged he received ineffective assistance of trial counsel. (*Id.*)

On May 17, 2011, Petitioner filed the instant federal petition for writ of habeas corpus in this Court. In it, Swain raised seven claims, two of which had previously been / / /

1   presented to the California Supreme Court, and five of which had not.[3] Along with his

2   petition, Swain filed a Motion for Stay and Abeyance, in order to exhaust the

3   unexhausted claims before the state supreme court. (ECF No. 3.) This Court granted the

4   motion for stay on October 12, 2011. (ECF No. 12.)

5          Meanwhile, the California Court of Appeal denied Swain's petition on May 26,

6   2011. Petitioner then filed a petition for habeas corpus raising the same claims, in the

7   California Supreme Court on July 25, 2011. (Resp't Lodgment No. 9.) On February 21,

8   2012, the supreme court ordered an informal response from Respondent. (Resp't

9   Lodgment No. 10). Swain also filed a reply and amended replies. (Resp't Lodgment No.

10  12.) On July 11, 2012, the California Supreme Court denied the petition for writ of

11  habeas corpus without comment or citation. (Resp't Lodgment No. 13.)

12         On July 25, 2012, Petitioner notified this court of the California Supreme Court's

13  decision denying his petition for writ of habeas corpus. (ECF No. 16.) This court then

14  lifted the stay and ordered briefing. (ECF No. 17.) Respondent filed an Answer on

15  October 24, 2012. Petitioner filed a Traverse on February 8, 2013 and a supplemental

16  Traverse on February 14, 2013.[4] (ECF Nos. 32, 34.)

17  **IV.    DISCUSSION**

18       **A.  *Standard of Review***

19         This Petition is governed by the provisions of the Antiterrorism and Effective

20  Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320 (1997).

---

22  [3] The five claims were the same as those included in the petition for habeas corpus to the California Court of Appeal that was filed on May 5, 2011. (*See* Resp't Lodgment No. 9.)

23  [4] On February 4, 2013, Petitioner filed a notice of appeal in the Ninth Circuit. (ECF No. 31.)
24  The Court of Appeals dismissed the appeal for lack of jurisdiction on April 23, 2013 and mandate was issued June 17, 2013. (ECF No. 42.) On July 25, 2013, this Court denied Petitioner's request to conduct discovery. (ECF No. 43.) On August 8, Swain filed a Notice of Appeal to the Ninth Circuit
25  as to the Order denying discovery. (ECF No. 44.) An order which does not dispose of all claims as to all parties is generally not appealable. *Chacon v. Babcock*, 640 F.2d 221, 222 (9th Cir. 1981). An
26  appeal from an order the is neither final nor appealable does not divest the district court of jurisdiction over the action or the order challenged in the appeal. *See Estate of Conners v. O'Connor*, 6 F.3d 656,
27  658 (9th Cir. 1993); *United States v. Garner*, 663 F.2d 834, 837 (9th Cir. 1981). While the district court must accept and process all notices of appeal, regardless of defects, the district court need not refrain
28  from proceeding with the action or the matter appealed from based on the finding of a jurisdictionally invalid appeal. *See Nascimento v. Dummer*, 508 F.3d 905, 908-10 (9th Cir. 2007).

Under AEDPA, a habeas petition will not be granted with respect to any claim adjudicated on the merits by the state court unless that adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 8 (2002). In deciding a state prisoner's habeas petition, a federal court is not called upon to decide whether it agrees with the state court's determination; rather, the court applies an extraordinarily deferential review, inquiring only whether the state court's decision was objectively unreasonable. *See Yarborough v. Gentry*, 540 U.S. 1, 4 (2003); *Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004).

A federal habeas court may grant relief under the "contrary to" clause if the state court applied a rule different from the governing law set forth in Supreme Court cases, or if it decided a case differently than the Supreme Court on a set of materially indistinguishable facts. *See Bell v. Cone*, 535 U.S. 685, 694 (2002). The court may grant relief under the "unreasonable application" clause if the state court correctly identified the governing legal principle from Supreme Court decisions but unreasonably applied those decisions to the facts of a particular case. *Id.* Additionally, the "unreasonable application" clause requires that the state court decision be more than incorrect or erroneous; to warrant habeas relief, the state court's application of clearly established federal law must be "objectively unreasonable." *See Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate court decision and presumes it provides the basis for the higher court's denial of a claim or claims. *See Ylst v. Nunnemaker*, 501 U.S. 797, 805-06 (1991). If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application

of, clearly established Supreme Court law. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000) (overruled on other grounds by *Andrade*, 538 U.S. at 75-76); *accord Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). However, a state court need not cite Supreme Court precedent when resolving a habeas corpus claim. *See Early*, 537 U.S. at 8. "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent,]" *id.*, the state court decision will not be "contrary to" clearly established federal law. *Id.* Clearly established federal law, for purposes of § 2254(d), means "the governing principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Andrade*, 538 U.S. at 72.

Where the state court did not reach the merits of a claim because of the imposition of a state procedural bar, "there is no state court decision . . . . to which to accord deference." *Pirtle*, 313 F.3d at 1167. Thus, this Court must review those claims *de novo*. *Id.* However, AEDPA "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington v. Richter*, 562 U.S. __, 131 S. Ct. 770, 785 (2011). "Rather, as [the Supreme Court] has explained, '[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.'" *Johnson v. Williams*, __ U.S. __, 133 S. Ct. 1088, 1094 (2013) (quoting *Richter*, 131 S. Ct. at 785).

**B.** *Analysis*

In his federal petition for writ of habeas corpus, Swain raises seven grounds for relief.[5] In claim one, he argues the trial court erred in failing to give a unanimity instruction with regard to the securities fraud, theft and securities scheme charges and that his defense counsel was ineffective in failing to request such instructions. In his second claim, Petitioner contends he received multiple sentences for the same acts, in violation of his constitutional rights. Third, he asserts the trial court improperly instructed the jury

---

[5] Petitioner numbers his claims differently in his form petition, his supporting documents and memorandum of points and authorities. For the sake of clarity, the Court will refer to Swain's grounds for relief as labeled in his initial form petition. (*See* Pet. at 6-12, ECF No. 1.)

on the elements of the charged securities offenses, in violation of his due process rights. In claim four, Swain argues he received ineffective assistance of counsel, in violation of his Sixth Amendment rights. Fifth, he claims he received ineffective assistance of appellate counsel, in violation of his Sixth Amendment rights. In his sixth claim, he argues "outrageous government misconduct" rendered his trial fundamentally unfair. Finally, in claim seven, Swain contends that he is "actually innocent." (*See generally* Pet. at 6-12, ECF No. 1.)

## 1. Unanimity Instruction (Ground One)

In claim one, Petitioner argues the trial court erred in failing to give the jury a unanimity instruction on the charges involving securities violations under California Corporations Code section 25401 (counts 2, 3, 5, 6, 8, 9, 11, 13, 14, 16, 17, 18, 20, 22, 27), charges involving grand theft under California Penal Code section 487 (counts 4, 7, and 12), and charges of fraudulent securities schemes (counts 28-33). (*See* Pet. at 6.)[6] Swain raised these claims in the California Court of Appeal, and they were denied. (Resp't Lodgment Nos. 3, 6.) He raised them again in his petition for review to the California Supreme Court, and they were denied without comment or citation. (Resp't Lodgment Nos. 7, 8.) As such, this court looks through the state supreme court's denial to the decision of the appellate court. *See Ylst*, 501 U.S. at 801-06.

### a. Clearly Established Law

In general, a challenge to jury instructions does not state a federal constitutional claim. *Engle v. Isaac*, 456 U.S. 107 (1982)); *Gutierrez v. Griggs*, 695 F.2d 1195, 1197 (9th Cir. 1983). In order to warrant federal habeas relief, "it must be established not merely that the instruction is undesirable, erroneous or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." *Cupp v. Naughten*, 414 U.S. 141, 146, (1973); *see also Henderson v.*

---

[6] In claim one, Petitioner also argues that defense counsel was ineffective in failing to request a unanimity instruction as to those charges. The Court will address this claim in section IV(B)(4) of this Report and Recommendation, along with Petitioner's other allegations of ineffective assistance of trial counsel.

*Kibbe*, 431 U.S. 145, 154, (1977). To prevail on such a claim, petitioner must demonstrate that an erroneous instruction, "'by itself so infected the entire trial that the resulting conviction violates due process.'" *Estelle v. McGuire*, 502 U.S. 62, 72-73 (1991) (quoting *Cupp*, 414 U.S. at 147).

A petitioner has a particularly heavy burden to prove a due process violation on the basis of a failure to give an instruction, as an "omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson*, 431 U.S. at 155. Moreover, even assuming that omission of a particular instruction was constitutionally erroneous, federal habeas relief is not available unless the error had a substantial and injurious influence in determining the jury's verdict. *Hedgpeth v. Pulido*, 555 U.S. 57, 61-62 (2008) (per curiam) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)).

        *b.*    *Securities Fraud Violations (Counts 3, 5, 6, 8-9, 11, 13-14, 16-18, 20, and 27)*

Swain argues the jury should have been instructed that it must agree on a particular act, representation or omission and its materiality, as to each count of securities fraud. (Pet. at 6, ECF No. 1.) California Corporations Code Section 25401 states:

> It is unlawful for any person to offer or sell a security in this state or buy or offer to buy a security in this state by means of any written or oral communication which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

Cal. Corp. Code § 25401. Swain claims the prosecution presented several different theories regarding misrepresentations or omissions he allegedly made to investors, such as failure to tell investors about a water moratorium, failure to disclose limitation regarding historical designations of property, misrepresentations of his background in promotional materials, and his failure to disclose his previous convictions and bankruptcy. Petitioner alleges that the jury should have been instructed that it had to unanimously agree on the element of materiality of a misrepresentation or omission with respect to each alleged securities violation. (Pet. at 6, ECF No. 1.)

In denying the claim, the California Court of Appeal stated:

"'It is fundamental that a criminal conviction requires a unanimous jury verdict [Citations.].' [Citation.] What is required is that the jurors unanimously agree defendant is criminally responsible for 'one discrete criminal event.' [Citation.] '[W]hen the accusatory pleading charges a single criminal act and the evidence shows more than one such unlawful act, either the prosecution must select the specific act relied upon to prove the charge or the jury must be instructed in the words of [CALCRIM No. 3500] or their equivalent that it must unanimously agree beyond a reasonable doubt that defendant committed the same specific criminal act.'" (*People v. Thompson* (1995) 36 Cal.App.4th 843, 850.) When an instruction is essential to ensure the constitutional guarantee of unanimity, the trial court has a sua sponte duty to give it. (*People v. Crawford* (1982) 131 Cal.App.3d 591, 596.)

The California Supreme Court held in *People v. Russo* (2001) 25 Cal.4th 1124 (*Russo*) that jury unanimity is not required on the specific theory of guilt or particular method of commission of the crime. "The key to deciding whether to give the unanimity instruction lies in considering its purpose. The jury must agree on a 'particular crime' [citation]; it would be unacceptable if some jurors believed the defendant guilty of one crime and other jurors believed her guilty of another. But unanimity as to exactly how the crime was committed is not required. . . . In deciding whether to give the [unanimity] instruction, the trial court must ask whether (1) there is a risk the jury may divide on two discrete crimes and not agree on any particular crime, or (2) the evidence merely presents the possibility the jury may divide, or be uncertain, as to the exact way the defendant is guilty of a single discrete crime. In the first situation, but not the second, it should give the unanimity instruction." (*Id.* at pp. 1134-1135.)

*Russo* held that when the evidence "shows only a single discrete crime but leaves room for disagreement as to exactly how that crime was committed or what the defendant's precise role was, the jury need not unanimously agree on the basis or, as the cases often put it, the 'theory' whereby the defendant is guilty." (*Russo, supra*, 25 Cal.4th 1124 at p. 1132.) The *Russo* court cited *People v. Jones* (1986) 180 Cal.App.3d 509, 516, which stated in reference to a conspiracy conviction, that "'the jury only need be unanimous in finding an overt act was done in furtherance of the conspiracy, not in finding a particular overt act was done.'" (*Russo, supra*, at p. 1133.)

The trial court did not err in failing to instruct sua sponte regarding unanimity. Each of the counts, except counts 2 and 22, which we will address separately, alleged that Swain sold one security on a specific date to either a single individual or a married couple. Therefore, no likelihood existed that some jurors would conclude Swain was guilty of one crime and others think he was guilty of a different crime. As in *Russo*, here the jurors were not required to agree on the particular misrepresentations or omissions that they relied on for the convictions because that finding merely relates

to the manner of committing the crime. The dispositive issue was that in each case the jurors found Swain guilty of one crime of securities fraud, based on at least one misrepresentation or omission. (*Accord, Russo, supra*, at p. 1135.)

In any event, we conclude any error was harmless. "[I]n order for the unanimity instruction to make a difference, there must be evidence from which jurors could both accept and reject the occurrence of at least the same number of acts as there are charged crimes." (*People v. Brown* (1996) 42 Cal.App.4th 1493, 1502 (*Brown*).) In contrast, when the jury is presented with an all-or-nothing choice, a unanimity instruction is unnecessary or, if error, harmless. (*People v. Schultz* (1987) 192 Cal.App.3d 535, 539.) In *People v. Vargas* (2001) 91 Cal.App.4th 506, 561, the court acknowledged that "[t]here is a split of authority on the proper standard for reviewing prejudice when the trial court fails to give a unanimity instruction." Some cases apply the "harmless beyond a reasonable doubt" standard under *Chapman v. California* (1967) 386 U.S. 18, 24; other cases apply the standard from *People v. Watson* (1956) 46 Cal.2d 818, 836, which is whether "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*See e .g.*, *People v. Jenkins* (1994) 29 Cal.App.4th 287, 298-299 [applying *Watson*]; *People v. Deletto* (1983) 147 Cal.App.3d 458, 473, [applying *Chapman*].)

Here, the jurors were instructed with CALCRIM No. 220 requiring them to find guilt beyond a reasonable doubt. Swain himself testified he did not inform the investors regarding his bankruptcy and his prior convictions. Several victims testified they would not have invested in the schemes if they had known about those facts. The fraud examiner testified the investors were paid from other investors' money, and Swain produced no evidence to the contrary. No trial evidence showed that the mortgage certificates were secured by First Fidelity's ownership of real property. The jury was not presented with "evidence from which jurors could both accept and reject the occurrence of at least the same number of acts as there are charged crimes." (*Brown*, *supra*, 42 Cal.App.4th 1493at p. 1502.) Moreover, Swain relied on the sole defense that he did not make any material misrepresentations or omissions and did not intend to defraud. As stated in *People v. Riel* (2000) 22 Cal.4th 1153 (*Riel*), "this is 'a case where the jury's verdict implies that it did not believe the only defense offered.'" (*Id.* at p. 1200.)

Swain contends, "While, here, a securities violation could occur by either an oral or written misrepresentation of fact - which some might consider 'theories' - the omission or [mis]representation of fact must have been material and 'materiality is not a theory, but rather is an element of the crime." (Emphasis added.) This argument is unavailing because as stated in *Russo*, "We do not doubt that the requirement of an overt act is an element of the crime of conspiracy in the sense that the prosecution must prove it to a unanimous jury's satisfaction beyond a reasonable doubt. But that element consists of an overt act, not a specific overt act." (*Id.* at p. 1134.) Likewise, here, irrespective of whether the materiality of the

/ / /

/ / /

misrepresentation or omission is an element of the crime, the prosecutor was required to and did prove beyond a reasonable doubt to the satisfaction of a unanimous jury that Swain made a material misrepresentation or omission, not a specific one.

(Resp't Lodgment No. 6 at 6-10.)

Swain's claim of instructional error fails for several reasons. First, a state criminal defendant does not have a federal constitutional right to a unanimous verdict in a non-capital trial. *See Apodaca v. Oregon*, 406 U.S. 404, 410-14 (1972); *Johnson v. Louisiana*, 406 U.S. 356, 359, 363 (1972) (noting that "this Court has never held jury unanimity to be a requisite of due process of law"). The Supreme Court has also held that the Constitution does not require unanimous agreement on the theory underlying a charge. *See Schad v. Arizona*, 501 U.S. 624, 631-32 (1991). When a single crime can be committed by various means, the jury need not unanimously agree on which means were used so long as they agree that the crime was committed. *Id.* at 631-32; *see also Hoover v. Johnson*, 193 F.3d 366, 369 (5th Cir. 1999). Accordingly, Petitioner had no "clearly established" federal constitutional right to a unanimity instruction. *See Hassan v. Morawcznski*, 405 Fed. App'x 129, 131-32 (9th Cir. 2010) (unpublished opinion) (state court's rejection of claim based on failure to give special unanimity instruction did not warrant habeas relief because "the Supreme Court 'has never held jury unanimity to be a requisite of due process of law'" (quoting *Johnson*, 406 U.S. at 359)). The state court's failure to instruct the jury that it must unanimously agree on which material misrepresentation or omission formed the basis of the securities violations in counts 3, 5, 6, 8-9, 11, 13-14, 16-18, 20, 27, was not an unreasonable application of clearly established law. *See Carey v. Musladin*, 549 U.S. 70, 77 (2006) ("Given the lack of holdings from this Court regarding the [issue in dispute] it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'") (quoting 28 U.S.C. § 2254(d)(1))*; see also Cupp*, 414 U.S. at 146.

Second, Swain has not shown a violation of due process because the jury was properly instructed, pursuant to California law, that it must unanimously find that Swain made a material misrepresentation or omission, but not a specific one. *See People v. Butler*, 212 Cal. App. 4th 404, 426 (2012) (holding that "jurors were not required to agree on the particular misrepresentations or omissions they relied on for the convictions

because that finding merely relates to the manner of committing the crime"). The California Court of Appeal reasonably concluded that the unanimity jury instruction was not required under California law. *See Solis*, 219 F.3d at 928 ("California law does not require that jurors unanimously agree upon the basis for defendant's guilt, when alternate legally valid theories exist, in reaching a unanimous guilty verdict.") This court is bound by the state appellate court's construction of California law. *Aponte*, 993 F.2d at 707. The state appellate court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established law. *See* 28 U.S.C. § 2254(d).

Finally, even assuming for the sake of argument that omission of the instruction was constitutionally erroneous, Swain has not shown the alleged error had a substantial and injurious influence in determining the jury's verdict. *See Brecht*, 507 U.S. at 637. Where the alleged constitutional error did not result in actual prejudice to the defendant, his habeas petition must be denied. *Id*; *see also United States v. LeMaux*, 994 F.2d 684, 689 (9th Cir. 1993) (failure to give unanimity instruction was harmless where evidence of several predicate acts was overwhelming); *United States v. Hernandez–Escarsega*, 886 F.2d 1560, 1573 (9th Cir.1989) (same). Here, as the state court noted, Swain himself testified at trial that he failed to inform investors about his prior criminal convictions. (Resp't Lodgment No. 2, vol. 11 at 1851, 1860-61.) Every victim that testified stated that Swain's failure to disclose his convictions was material. (*Id.* vol. 4 at 399-400, 429-30, 509-10, 528-29; vol. 6 at 784-85, 857; vol. 8 at 1374, 1431-33.) An expert testified that bankruptcies and past convictions are required disclosures. (*Id.* vol. 12 at 1270-72.) In sum, there was overwhelming evidence that Swain made material misrepresentations and omissions to investors. Therefore, Swain is not entitled to relief as to this claim.

/ / /

/ / /

### c. Securities Fraud Violations (Counts 2 and 22)

Swain also argues the jury should have been given a unanimity instruction as to counts 2 and 22. In these counts, the prosecutor alleged Swain sold securities to

1  individuals on more than one occasion, over a period of time. In count 2, it was alleged

2  that "on and between August 16, 2005 and October 3, 2005," Swain offered to sell

3  Charles and Hava Adams a security. (Resp't Lodgment No. 1, vol. 1 at 54.) In count 22,

4  it was alleged that Petitioner unlawfully offered a security to Albert and Tamara Petrosian

5  "on and between October 4, 2005 and December 5, 2005." (*Id.* at 63.) Swain claims

6  jurors could have concluded that one purchase was based on a fraud and the other was

7  not. As such, he argues, a unanimity instruction was required. (Pet. at 6, ECF No. 1.)

8       The Court of Appeal concluded that the unanimity was not required and that, in

9  any event, any error was harmless, stating:

10      The evidence regarding [count 2] included an August 13, 2005 check
        from Charles Adams for $ 22,500 payable to "SoCal Development Fund,"
11      and a mortgage certificate dated August 15, 2005, which documented the
        Adams's investment. The prosecutor explained to the jury in closing
12      argument, "Then we have count 2 . . . [w]e have the fraud and the offer of
        the security, where the offer of the security is made, which we know there's
13      no dispute, these were securities, where material misrepresentation or
        omission is made. We have that alleged as a continuing course of conduct
14      in this particular charge during that time frame. [¶] Then we have a separate
        fraud in the offer of the security alleged, a new one, and in this case you'll
15      see there's facts that represent a reloading or a roll over on October 3rd of
        2005."

16
17      We conclude that as to count 2, the trial court was not required to
        instruct regarding unanimity, notwithstanding that the prosecutor referred
18      to a roll over from a first security offer into a second security offer that
        occurred approximately six weeks later. The two security offers formed part
19      of one ongoing security offer such that the jury could not, in practical terms,
        find the first security offer was a crime without simultaneously finding the
20      roll over was a continuation of the crime. Stated differently, the jury
        necessarily would find that the roll over security offer can only be
21      understood in light of the predicate first offer, although approximately six
        weeks intervened between the two offers. Accordingly, there is no reason
22      to conclude that some jurors would agree that only the initial security offer
        was a crime while others agreed only the second roll over security offer was
23      a crime. They necessarily reached a unanimous verdict on the same basis.
        In any event, any error was harmless beyond a reasonable doubt because
24      Swain relied on the sole defense that he did not intend to defraud and did
        not make any material misrepresentations or omissions.

25      The information alleged as to count 22 that "on and between October
        4, 2005, and December 1, 2005," Swain unlawfully offered a security to
26      Albert and Tamara Petrosian in Southwest Development Fund, Phase 1
        (Series A) LLC. Albert Petrosian testified he invested $300,000 with First
27      Fidelity. The evidence regarding this count included one check from Albert
        Petrosian dated September 30, 2005, for $300,000 and made payable to
28      "Southwest Development Fund 1 A" and two mortgage certificates, each
        dated October 4, 2005, documenting an investment by the "Petrosian Family

Trust" of $150,000, at an interest rate of 9.5 percent. First Fidelity paid Albert Petrosian interest on his $300,000 investment. He testified that around November 26, 2005, he purchased three additional securities, one for each of his three grandchildren, for $24,000 each. This amount represented the maximum federal tax limit on gifts he could make to each of his grandchildren. First Fidelity issued him three separate mortgage certificates for those securities.

Swain contends the unanimity instruction was required as to count 22 because "the evidence reflected more than one purchase of a security interest in the Southwest Development Fund." Again, based on the above analysis, we conclude the instruction was not required. Swain did not introduce evidence from which the jurors could both agree and disagree regarding the relevance of the various checks to support the count 22 charge. Therefore, the jurors unanimously agreed beyond a reasonable doubt that each of the checks was related to the charged crime, and Swain made material misrepresentations or omissions to Albert Petrosian. Moreover, as we stated, any error was harmless because the jury by its verdict clearly rejected Swain's sole defense to the charges, which was that he lacked the intent to defraud. (*Riel*, supra, at p. 1200.)

(Resp't Lodgment No. 6 at 10-12.)

The state court's denial of the claim was neither contrary to, nor an unreasonable application of, clearly established law. As discussed above, the Constitution does not require unanimous agreement on the theory underlying a charge. *See Schad*, 501 U.S. at 631-32. In addition, the state court's conclusion that such instruction was not required under California law is afforded deference. *See Aponte*, 993 F.2d at 707. Finally, even assuming there was constitutional error, Swain has not established that it had a "substantial injurious effect" on the jury's verdict. Evidence showed that both Charles Adams and Albert Petrosian wrote more than one check to Swain's funds, based on information Swain provided them. (Resp't Lodgment No. 2, vol. 3 at 236-37; vol. 6 at 772-77.) It was uncontested that Swain did not inform either of the Adams' or Petrosian of his prior criminal convictions and bankruptcy. Petrosian testified that he would never have invested with Swain, had he known of his past.[7] (*Id.* vol. 6 at 784-85.) There is simply nothing in the record to suggest that the jury could have found fraud in one of the

---

[7] Charles Adams passed away several months before the trial. His wife, Hava, testified that Charles had handled the couple's investments. She authenticated checks her husband wrote to Petitioner's fund and numerous documents her husband kept related to the investments. (Resp't Lodgment No. 2, vol. 3 at 236-41.)

transactions, but not another. Accordingly, even assuming error, Swain can not show prejudice. *See Hedgpeth v. Pulido*, 555 U.S. 57, 61-62 (2008).

The Court of Appeal's determination was neither contrary to nor an unreasonable application of clearly established federal law, that failure to instruct did not so infect the entire trial as to violate Swain's right to due process, and any error did not have a substantial and injurious effect on the jury's verdict given the substantial evidence supporting conviction. *See Estelle*, 502 U.S. at 67; *see also Brecht*, 507 U.S. at 637. Petitioner is not entitled to relief.

### d.    Grand Theft (Counts 4, 7, and 12)

Next, Petitioner claims the trial court erred in failing to give an unanimity instruction as to the grand theft counts 4, 7 and 12 because each count alleges the purchase of more than one security over a period of time, as opposed to a specific date. (*See* Pet. at 6, ECF No. 1.) He claims the jury was required to agree on which alleged purchase formed the basis of the conviction. (*Id.*) The California Court of Appeal denied the claim, stating:

> Penal Code section 487, subdivision (a) provides that grand theft is theft committed "when the money, labor, or real or personal property taken is of a value exceeding four hundred dollars." The jury was instructed regarding the intent element of grand theft by false pretense: "To prove that the defendant is guilty of the crime the People must prove that: [¶] 1. A person made or caused to be made to the alleged victim by word or conduct, either: (1) a promise without intent to perform it, or (2) a false pretense or representation of an existing or past fact known to the person to be false or made recklessly and without information which would justify a reasonable belief in its truth; [¶] The person made the pretense, representation or promise with the specific intent to defraud; [¶] 3. The pretense, representation or promise was believed and relied upon by the alleged victim and was material in inducing them to part with their money or property even though the false pretense, representation or promise was not the sole cause."
>
> Again, we conclude there was no error in failing to instruct regarding unanimity because for each of the grand theft counts, "there must be evidence from which jurors could both accept and reject the occurrence of at least the same number of acts as there are charged crimes." (*Brown*, supra, 42 Cal.App.4th at p. 1500.) Here, there was no evidentiary basis for the jury to conclude that some of the acts of grand theft, but not others, were crimes. Moreover, as we noted above, Swain's sole defense against all grand theft charges was that he did not intend to defraud the investors and made no material misrepresentation or omissions to the investors. The jury by its verdict impliedly rejected this defense. (*Riel*, supra, at p. 1200.)

(Resp't Lodgment No. 6 at 12-13.)

As with his previous claims, Swain is not entitled to relief because there is no "clearly established" federal constitutional right to an unanimity instruction. *See Johnson*, 406 U.S. at 359. Thus, the state court's failure to instruct the jury that it must unanimously agree on which security purchases were the basis for the "grand theft" counts, did not violate Petitioner's due process rights. *See Cupp*, 414 U.S. at 146. The state court's denial of the claim was therefore neither contrary to, nor an unreasonable application of, clearly established law. *See Estelle*, 502 U.S. at 67.

Furthermore, even if there had been error, Swain has not shown prejudice. In count 4, evidence showed that James Bean made an initial investment of $159,000, and then another for $115,000 a few months later. (Resp't Lodgment No. 2, vol. 6 at 840, 849-50.) Bean testified that Swain had represented to him that he was just a salesperson and that Victoria Wright was the president of First Fidelity. (*Id.* at 843-44.) He would not have invested had he known that Swain was the president of the company. (*Id.* at 857-58.) He also stated he would not have invested had he known of Swain's criminal convictions and bankruptcy. (*Id.* at 857-58.) He would not have invested had he known interest payments were made only from money received from other investors. (*Id.*)

Likewise, as to count 7, William Dykman testified that he made an initial investment of $50,000 in March 2004 and another for $150,000 in February 2006. He would not have invested had he known that interest was generated solely from funds taken from other investors. (*Id.* vol. 8 at 1363, 1373.) He also testified that knowledge of Swain's prior convictions and bankruptcy would have had a "major impact" on his decision to invest. (*Id.* at 1374.) Robert Hill (count 12) invested $100,000 in June 2005 and another $100,000 in October 2006. (*Id.* vol. 4 at 419-21.) Hill would not have invested with Swain had he known of Swain's prior felonies, his bankruptcy, or that the interest paid came solely from monies secured from other investors. (*Id.* vol. 4 at 430-31.)

Swain's only defense to any of these charges was that he did not know he needed

to disclose his criminal history and bankruptcy to investors, the information was not material, and he had no intent to defraud investors. There was no evidence presented that would cause a juror to find that one investment by an individual was obtained by grand theft, and not another. Thus, even assuming there was error, it did not have a substantial injurious effect on the jury's verdict. *See Brecht*, 507 U.S. at 637. Petitioner is not entitled to relief as to this claim.

### e. Fraudulent Securities Scheme (Counts 28-33)

Finally, Swain argues the jury should have been given a unanimity instruction as to counts alleging he was involved in fraudulent securities schemes under California Corporation Code section 25541 (counts 28-33). The appellate court denied the claim as follows:

> Section 25541 provides for punishment by a fine or imprisonment for: "Any person who willfully employs, directly or indirectly, any device, scheme, or artifice to defraud in connection with the offer, purchase, or sale of any security or willfully engages, directly or indirectly, in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person in connection with the offer, purchase, or sale of any security."

> Except for the word "act," all the terms defining this offense, by their nature, describe a course of conduct. "Scheme" is defined as "a plan or program of something to be done. (Webster's New Internat. Dict. (3d ed.1966) p.2029.) "Device" is defined as "something that is formed or formulated by design and usually with consideration of possible alternatives, experiment, and testing." (*Id*. at p. 618.) "Artifice" is defined as "a wily or artful stratagem." (*Id*. at p. 124.)

> Swain concedes section 25541 contemplates a course of conduct, but maintains that he was charged with more than one scheme or plan to defraud; therefore the instruction was necessary "to guarantee that the verdicts on each count indeed reflected the jury's agreement that the alleged scheme had been committed as opposed to a conclusion [he] engaged in one big scheme which may or may not have included the separately charged offerings subject of counts twenty-eight through thirty-two."

> As Swain testified and the documentary evidence showed, the different schemes were marketed with their separate prospectuses; on the subscription agreements, investors elected the specific investment scheme they were interested in, and they were issued mortgage certificates identifying the exact investment scheme in which they had invested. Therefore, contrary to Swain's contention, there was no likelihood that some jurors convicted him for running a giant investment scheme that incorporated all the different investment funds, while other jurors convicted

him based on one specific securities scheme.

(Resp't Lodgment No. 6 at 14-15.)

Swain's claim fails for the same reasons discussed above. First, there is no "clearly established" federal constitutional right to a unanimity instruction. *See Johnson*, 406 U.S. at 359. The state court's denial of the claim was neither contrary to, nor an unreasonable application of, clearly established law. *See Estelle*, 502 U.S. at 67. Furthermore, it is clear from the record that the jury found Swain had violated section 25541 with regard to each separate fund, specifically, "La Honda" (count 29), "SoCal" (count 30), "Southwest, (Series A)" (count 31), "Southwest (Series B)" (count 32) and "Southwest (Series C)" (count 32) and "New Mexico" (count 33).The jury made an individual determination that each separate fund constituted a fraudulent scheme. (*See* Resp't Lodgment No. 1, vol. 1 at 187-92.) Therefore, even if there had been error, it was harmless. *See Brecht*, 507 U.S. at 637. Petitioner is not entitled to relief as to this claim.

### (f)     Conclusion

In sum, the Court finds Petitioner has failed to establish the state court's denial of his jury instruction claims was contrary to, or an unreasonable application of, clearly established law. *See Williams*, 529 U.S. at 412-13. Even assuming a due process violation occurred, Swain has not shown he was prejudiced. *See Brecht*, 507 U.S. at 637. He is not entitled to relief as to claim one.

/ / /

/ / /

/ / /

### 2.     Multiple Punishment

Swain contends the trial court imposed "unconstitutional multiple punishment[s]" for several counts of securities violations. (*See* Pet. at 7, ECF No. 1.) Respondent argues that in the state court, Petitioner relied exclusively on the multiple-punishment bar of California Penal Code section 654 as the basis for his claim and as a result, the claim is not cognizable on federal habeas review. (Answer at 7.)

First, although Swain states his sentence was "unconstitutional," his claim is essentially a challenge to the trial court's application of California Penal Code Section 654. *See Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir.) ("[A petitioner] may not transform a state-law issue into a federal one merely by asserting a violation of due process."). Such a state law claim is not cognizable on federal habeas review. *See Watts v. Bonneville*, 879 F.2d 685, 687 (9th Cir.1989) (allegation that state court misapplied California Penal Code section 654 is question of state law not cognizable on federal habeas review). This Court will not review a state court's interpretation of its own law unless that interpretation "is clearly untenable and amounts to a subterfuge to avoid federal review of a deprivation by the state of rights guaranteed by the Constitution." *Knapp v. Cardwell*, 667 F.2d 1253, 1260 (9th Cir.1982). Swain has made no such showing here.

Second, even if this Court liberally construes the allegation to raise a due process claim, it is unexhausted. To satisfy the exhaustion requirement, a federal habeas petitioner must "provide the state courts with a 'fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (quoting *Picard*, 404 U.S. at 276-77). Petitioner must have "'fairly presented' to the state courts the 'substance' of his federal habeas corpus claim." *Anderson*, 459 U.S. at 6 (quoting *Picard*, 404 U.S. at 275, 277-78). The Supreme Court has stated "it is not sufficient merely that the federal habeas applicant has been through the state courts." *Picard*, 404 U.S. at 275-76. Instead, the petitioner must "present the state courts with the same claim he urges upon the federal courts." *Id*. at 276. Here, as Respondent notes, Swain relied solely on state law in his appeals to the California Court of Appeal and California Supreme Court. (*See* Resp't Lodgment Nos. 3, 5.) As such, he failed to "fairly present" the federal aspect of his claim to the state courts. The claim is therefore unexhausted.

Typically, the exhaustion of available state judicial remedies is a prerequisite to a federal court's consideration of claims presented in habeas corpus proceedings. 28

U.S.C. § 2254(b); *see Rose v. Lundy*, 455 U.S. 509, 522 (1982). Notwithstanding the total-exhaustion rule in *Rose*, however, federal district courts have the discretion to deny a habeas "application" on the merits despite a petitioner's failure to fully exhaust state judicial remedies. *See* 28 U.S.C. § 2254(b)(2) (West 2006). A court may deny an unexhausted claim on the merits when "it is perfectly clear that the applicant does not raise even a colorable federal claim." *Cassett v. Stewart*, 406 F.3d 614, 624 (9th Cir. 2005).

Here, it is clear the Swain has failed to present a colorable claim. To the extent Petitioner's claim can liberally be construed as a due process challenge, it is without merit. The Court of Appeal rejected Petitioner's claim that the trial court erroneously applied section 654. The court stated in relevant part:

> Whether a course of conduct is indivisible for purposes of section 654 depends on the intent and objective of the actor. If all the offenses are incidental to one objective, the defendant may be punished for any one of them, but not for more than one. (*People v. Latimer* (1993) 5 Cal.4th 1203, 1208.) On the other hand, if the evidence discloses that a defendant entertained multiple criminal objectives which were independent of and not merely incidental to each other, the trial court may impose punishment for independent violations committed in pursuit of each objective even though the violations shared common acts or were parts of an otherwise indivisible course of conduct. (*People v. Centers* (1999) 73 Cal.App.4th 84, 98.)

> The principal inquiry in each case is whether the defendant's criminal intent and objective were single or multiple. Each case must be determined on its own facts. (*People v. Perez* (1979) 23 Cal.3d 545, 551; *People v. Beamon* (1973) 8 Cal.3d 625, 630-639 (*Beamon*).) The question whether the defendant entertained multiple criminal objectives is one of fact for the trial court, and its findings on this question will be upheld on appeal if there is any substantial evidence to support them. (*People v. Coleman* (1989) 48 Cal.3d 112.) If the trial court does not make an express finding, an implied finding that the crimes were divisible inheres in the judgment and must be upheld if supported by the evidence. (*People v. Nelson* (1989) 211 Cal.App.3d 634, 638.)

> Furthermore, under Penal Code section 654, "a course of conduct divisible in time, although directed to one objective, may give rise to multiple violations and punishment." (*Beamon*, supra, 8 Cal.3d 625, 639, fn. 11; see, e.g., *People v. Kwok* (1998) 63 Cal .App.4th 1236, 1253-1254.) "If the offenses were committed on different occasions, they may be punished separately." (*Kwok*, at p. 1253.) This is particularly so when offenses are temporally separated in such a way as to afford the defendant opportunity to reflect and to renew his or her intent before committing the next one, thereby aggravating the violation of public security or policy already undertaken. (*Id*. at pp. 1326, 1255-1256.)

Here, it is apparent from the record that each charged crime occurred at a different time. We find this court's ruling in *People v. Lochmiller* (1986) 187 Cal.App.3d 151 controlling. In that case, we considered the applicability of Penal Code section 654 to the sales of unregistered securities within the meaning of section 25110. (*Lochmiller*, supra, at p. 152.) Defendant Lochmiller sold the unregistered securities in 11 separate sales to 10 investors, making sales at different times to different individual investors. (*Ibid.*) In that case, as here, it was argued that the defendant was susceptible to punishment on only one count because there was no evidence of more than one intent. (*Id.* at p. 153.) We rejected the claim and held that the single objective in selling unregistered securities to obtain money did not bar multiple punishment for each separate sale, because the unlawful sales occurred at different times, for different amounts, to different victims. (*Ibid.*) Accordingly, punishment for each separate sale to an individual investor was not prohibited by section 654. (*Lochmiller*, supra, at p. 154.) Likewise, defendant's acts here were separate transactions occurring at different times, for different amounts, with different victims. Over the course of four years, defendant defrauded approximately 90 individuals. Applying *Lochmiller's* reasoning, we reject Swain's Penal Code section 654 argument.

(Resp't Lodgment No. 6 at 16-19.)

Even assuming the trial court's purported misapplication of California Penal Code section 654 presented a due process issue, Petitioner would not be entitled to relief because the trial court properly applied the provision and his sentence was not fundamentally unfair. "Absent a showing of fundamental unfairness, a state court's misapplication of its own sentencing laws does not justify federal habeas relief." *Christian v. Rhode*, 41 F.3d 461, 469 (9th Cir. 1994). California Penal Code section 654 prohibits multiple punishment for "[a]n act or omission that is punishable" by different provisions of law. Cal. Penal Code § 654(a). Here, the trial court imposed a three-year middle term on the principal count involving selling securities by misrepresentation or omission of material fact under California Corporations Code section 25401 (count 2), eight consecutive one-year terms on like counts involving different victims (counts 5, 8, 11, 13, 16, 20 and 22), and six consecutive one-year terms for the counts charging a fraudulent securities scheme under California Corporations Code section 25541 (counts 28-33). Each crime involved separate acts and separate victims. Section 654 does not apply when criminal acts are divisible in time, even if the acts are directed toward one criminal objective. *See People v. Beamon*, 8 Cal. 3d 625, 639 (1973); *People v. Frederick*, 142 Cal. App. 4th 400, 421 (2006). And as the state court concluded, section

654 does not prohibit punishment for each separate unlawful sale of securities "for different amounts of money to different victims." *Lochmiller*, 187 Cal.App.3d 151, 153 (1986). Accordingly, the trial court did not commit state law error, let alone a due process violation. Petitioner is not entitled to relief as to claim two. *See Cassett*, 406 F.3d at 624.

### 3. Instruction on the Elements of the Offense

In claim three, Petitioner argues the jury was improperly instructed on the elements of the offenses under California Corporation Code sections 25401, 25540, and 25541. (*See* Pet. at 8, ECF No. 1.) He also argues that his conviction under California Penal Code section 487 (grand theft) and section 386 (elder abuse) cannot stand if the other convictions fall. (*See id.*)

Swain raised this claim in his petition for writ of habeas corpus in the California Supreme Court. (Resp't Lodgment No. 9.) The court requested and received an informal response from Respondent (*see* Resp't Lodgment Nos. 10, 11) and then denied the claim without comment or citation. (Resp't Lodgment No. 13.) Accordingly, because there is no reasoned state court decision to which this court can defer, the court must conduct an independent review of the record to determine whether the state court's denial was contrary to, or an unreasonable application of, clearly established law. *See Himes v. Thompson*, 336 F.3d at 853.

As discussed above, to the extent Swain argues the instructions were erroneous a matter of state law, his claim is not cognizable on federal habeas review. *Estelle*, 502 U.S. at 71-72. To merit relief, clearly established law requires a petitioner to show that the instructional error so infected the entire trial that the resulting conviction violated due process. *Id.* at 72; *Henderson*, 431 U.S. at 154; *Cupp*, 414 U.S. at 147. Instructional error warrants federal habeas relief only if it created a "reasonable likelihood" that the jury evaluated the evidence in a manner inconsistent with constitutional due process or another enumerated federal constitutional right. *See Waddington v. Sarausad*, 555 U.S. 179, 190-91 (2009).

As to Corporations Code section 25401, the trial court instructed the jury:

> Every person who offers or sells a security by means of any written or oral communication which includes an untrue statement or a material fact or omits to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, is guilty of a violation of section 22401, a felony.

In order to prove this crime, each of the following elements must be proved:

1. A person offered or sold a security;

2. That offer or sale was made by means of a written or oral communication;

3. That such communication either:

   a. Included an untrue statement of a material fact or facts; or

   b. Omitted to state a material fact or facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

4. The person

   a. Knew the falsity or misleading nature of the statement or materiality of the omission; or

   b. Was criminally negligent in failing to investigate or discover them.

(Resp't Lodgment No. 1, vol. 1 at 148.)

/ / /

/ / /

/ / /

/ / /

The instruction provided to the jury tracks the language of the statute,[8] as required

_____

[8] Section 25401 states:

> It is unlawful for any person to offer or sell a security in this state or buy or offer to buy a security in this state by means of any written or oral communication which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they

by California law when there is no standard instruction. *See People v. Estrada*, 11 Cal. 4th 568, 574-75 (1995). The instruction also included language consistent with the California Supreme Court's decision that under section 22401, it must be proved that the "issuer [was] aware or should have been aware at the time of the sale that a material representation is untrue, or knew or should have known that an unstated fact was material." *People v. Simon*, 9 Cal. 4th 493, 523 (1995). In *Simon*, the court held that even though section 25540 did not contain an explicit knowledge requirement, "knowledge of the falsity or misleading nature of a statement or of the materiality of an omission, or criminal negligence in failing to investigate and discover them, are elements of the criminal offense described in section 25401." *Id.* at 522.

The trial court also instructed the jury as to the definition of material as follows:

> A fact is material if . . . .its existence or non-existence is a matter to which a reasonable investor would attach importance in the making of his decision.

> An omitted fact is material if there is a substantial likelihood that a reasonable investor would consider it important in deciding a course of action.

(Resp't Lodgment No. 1, vol. 1 at 150.)

Swain argues the court erred in failing to instruct the jury that it must find that he "knew the misrepresentation or omission was 'material,'" and that there was a connection between the misrepresentation or omission and the purchase of the security. (*See* Pet., Ex. A, ECF No. 1-1 at 45.) First, contrary to Swain's assertion, the jury was instructed that it must either find that Swain "knew of the falsity or misleading nature of the statement *or the materiality of the omission*" or that he was criminally negligent in failing to investigate or discover the falsity or omission. (Resp't Lodgment No. 1, vol. 1 at 148 (emphasis added).) Second, there is no requirement in the statute that the purchase be "connected" to the material misrepresentation or omission. Thus, Swain has not met his

---

were made, not misleading.

Cal. Corp. Code § 25401.

heavy burden of demonstrating that the instruction was erroneous, much less that it "so infected the entire trial that the resulting conviction violates due process." *See Estelle*, 502 at 72.

Even assuming the jury should have been so instructed, Swain cannot show prejudice. Errors in jury instructions involving "omissions or incorrect descriptions of elements are considered trial errors" and are subject to a harmless error analysis. *Lara v. Ryan*, 455 F.3d 1080, 1086 (9th Cir. 2006) (citing *Neder v. United States*, 527 U.S. 1, 8-11 (1999). Thus, in habeas cases involving instructional error, a habeas petitioner is generally not entitled to habeas relief unless such error had a "substantial and injurious effect or influence in determining the jury's verdict." *See Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993); *see also Clark v. Brown*, 450 F.3d 898, 905 (9th Cir. 2006) There was no dispute that Swain failed to disclose his criminal convictions and bankruptcy to investors. Virtually every victim testified that they would not have invested with Swain if they had know of his criminal history, or about his bankruptcy. (Resp't Lodgment No. 2, vol. 3 at 221, 258, 311 vol. 4 at 371, 399, 429, 448-49, 509, 528; vol 5 at 738; vol. 6 at 784-85, 806, 828-29, 857; vol. 8 at 1242-43, 1432.) Furthermore, most victims testified Swain had not informed them the interest payments they would receive would come exclusively from soliciting monies from other investors, and had they known this, they would not have invested with Swain. (*See* Resp't Lodgment No. 2, vol. 3 at 223, 311-12; vol. 4 at 373, 400-01, 431, 447-48, 511, 529; vol. 6 at 785, 807, 829, 858; vol. 8 at 1242, 1373, 1434.) There was overwhelming evidence that Swain's material misrepresentations and omissions influenced investors and thus any instructional error did not have a substantial injurious effect on the jury's verdict. *See Morales v. Woodford*, 388 F.3d 1159 (9th Cir. 2004).

Swain also claims the jury should have been instructed that the prosecution must prove the investor "suffered an economic loss prior to the arrest" of the defendant and that "loss was caused by the specific misrepresentation or omission." (*See* Pet., Ex. A, ECF No. 1-1 at 45.) There is simply no requirement in section 25401that the victim

suffer an economic loss, much less a "loss prior to the arrest of [the defendant]." Indeed, the term "loss" in nowhere to be found in the language of the statute. Swain nonetheless argues that the California statute was modeled after federal securities law, and under federal law it must be proved that economic losses were caused by the alleged material misrepresentation. (*See* Pet. Ex. 1-A, ECF No. 1-3, at 11-12.) He points to a federal law for private securities fraud civil actions which requires such causation. *See* 15 U.S.C. §§ 77l(a)(2) & 78u-4(b)(4); *see also Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336, 346 (2005). Regardless of the requirements for private federal civil actions,[9] there is nothing in the plain language of the section 25401 to suggest that individual loss is required under California law. The language federal statute, on the other hand, makes "loss causation" a clear requirement.[10] *See* 15 U.S.C. §§ 78u-4(b)(4) & 77l(b). And as discussed above, under state law it is generally sufficient to base a jury instruction on the language of the statute when a standard instruction does not exist. *See Estrada*, 11 Cal. 4th at 574-75. The United States Supreme Court has emphasized that its "habeas precedent places an 'especially heavy' burden on a defendant who . . . seeks to show

/ / /

constitutional error from a jury instruction that quotes a state statute." *Waddington*, 555 U.S. at 190. Swain has failed to satisfy that burden here.

As to California Corporations Code section 25541, the jury was instructed as follows:

> Every person who willfully employs directly or indirectly, any device,

---

[9] Swain also argues that by not instructing on the same elements as are required under federal securities law for civil actions, his due process rights were violated because he was criminally convicted based "lower legal threshold" than that required for civil judgments and he cites to *In re Winship*, 397 U.S. 358 (1970). (Pet., Ex. 1-A at 15, ECF No. 1-3; *see also* Traverse at 17-18.) Swain's reliance on *In re Winship*, is misplaced. There, the Court held that every essential element of the *criminal* offense must be proved beyond a reasonable doubt. *Id.* Civil federal securities violations under section 10(b) of the Securities and Exchange Act of 1937 (15 U.S.C. § 78j) must be proved only by a "preponderance of evidence." *See Herman & MacLean v. Huddleston*, 459 U.S. 375, 390 (1983).

[10] 15 U.S.C. § 77u-4(b)(4) states:

> In any private action arising under this chapter, the plaintiff shall have the burden of proving that the act or omission of the defendant alleged to violate this chapter caused the loss for which the plaintiff seeks to recover damages.

scheme or artifice to defraud in connection with the offer, purchase, or sale of any security, or willfully engages, directly or indirectly, in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person in connection with the offer, purchase or sale of any security, is guilty of a violation of section 25541, a felony.

In order to prove this crime, each of the following elements must be proved:

    1.    That a security was offered for sale or sold in this state;

    2.    That in connection with the offer or sale of the security the defendant, directly or indirectly, did one of the following:

        a.    employed a device, scheme or artifice to defraud any person; or

        b.    engaged in an act, practice or course of business which operates or would operate as a fraud or deceit on any person.

    3.    That the person did so with the specific intent to defraud.

(Resp't Lodgment No. 1, vol. 1 at 152.)   The trial court also instructed the jury that:

The finding of a criminal violation of Corporations Code section 25541 does not require a finding that any particular investor actually knew of, or relied on, any false or misleading information disseminated by a defendant either as part of a device, scheme or artifice to defraud or as part of an act, practice or course of business which operates, or could operate, as fraud.

(Resp't Lodgment No. 1, vol. 1 at 153.)  Finally, the jury was instructed:

As used in [section 25541], the words "device," "scheme," or "artifice" mean a deliberate plan of action or course of conduct by which someone intends to deceive or to cheat another or by which someone intends to deprive another of something of value.

(*Id.* at 154.)

/ / /

As with section 25401, the main instruction for section 25541 tracks the statutory language, as required by California law. *See Estrada*, 11 Cal. 4th at 574-75.  As such, Petitioner has not satisfied his burden to establish the instruction rendered his trial fundamentally unfair. *See Waddington*, 555 U.S. at 190.  Swain argues that the trial court

erred in further instructing the jury that investors need not have relied on misleading information to find him guilty under section 25541.[11] There is nothing in the language of the statute that suggests reliance is required. Moreover, even assuming the instruction was erroneous, Swain has not shown prejudice for the same reasons discussed above. Every victim who testified regarding the section 25541 testified that they would not have invested if they had known Swain had three prior convictions for grand theft related to real estate, had a bankruptcy, and that the interest paid on the investments would come solely from other investors' monies. (Resp't Lodgment No. 2, vol. 2 at 169-70; vol. 3 at 221-23, 258, 311; vol. 4 at 371, 429, 448-49, 528; vol. 5 at 738; vol. 6 at 784-85, 806, 828-29, 857; vol. 8 at 1242-43, 1265-66, 1432.) Accordingly, Swain is not entitled to relief.

Finally, Swain makes a vague argument that his convictions for theft and elder abuse were in violation of his due process rights based on the alleged erroneous instruction as to the securities fraud counts. (Pet., Ex. A at 44, ECF No. 1-1.) This claim is conclusory, and such allegations cannot form the basis for federal habeas relief. *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994). The Court notes, nonetheless, that the trial court instructed the jury as to both theft by false pretense and theft from an elder, pursuant to California's standard jury instruction. (*See* Resp't Lodgment No. 1, vol. 1 at 146-47; *See also* CALCRIM Nos. 1804 & 1807.)

/ / /

In sum, the state court's denial of Petitioner's instructional error claims were neither contrary to, nor an unreasonable application of, clearly established law. *Williams*, 529 U.S. at 412-13. Furthermore, even assuming constitutional error, Swain has not shown prejudice. *Brecht*, 507 U.S. at 638. Therefore, the Court finds he is not entitled

---

[11] Although not entirely clear, Petitioner also appears to argue that the instruction that the jury need not find the investor relied on misstatements or omissions was erroneous because it was inconsistent with the "materiality" requirement of section 25401. (*See* Traverse at 13, ECF No. 34.) The jury was clearly instructed, however, that this instruction applied only to the counts under section 25541. Jurors are presumed to follow the instructions they have been given. *Zafiro v. United States*, 506 U.S. 534, 540 (1993).

to relief as to claim three.

### 4. Ineffective Assistance of Trial Counsel

Swain next contends that he received ineffective assistance of trial counsel in violation of his Sixth Amendment rights. He argues trial counsel should have objected to the trial court's failure to give unanimity instructions for securities fraud, theft, and operating securities schemes, or counsel should have requested such instructions. Petitioner also contends trial counsel ineffective because he was unprepared for trial. (*See* Pet. at 9, ECF No. 1.) He claims trial counsel failed to call several witnesses who would have testified that he ran a legitimate business and his criminal history and prior bankruptcies were irrelevant and therefore not "material" to a reasonable investor. He failed to present evidence that reasonable people invest monies without regard for the background of the principal party. (*See id.*)

Swain raised these claims in his petition for writ of habeas corpus to the California Supreme Court. (Resp't Lodgment No. 9.) After requesting (and receiving) an informal response from Respondent, the court denied the petition without comment or citation. (*See* Resp't Lodgment Nos. 10-11, 13.) Accordingly, because there is no reasoned state court decision to which this court can defer, this court must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. *See Himes*, 336 F.3d at 853.

#### a. Clearly Established Law

To prevail on a claim of ineffective assistance of trial counsel in federal court, Swain must first establish that his trial counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "This requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Judicial scrutiny of counsel's performance must be "highly deferential." *Id.* at 689. Second, she must show counsel's deficient performance prejudiced the defense. Under *Strickland*,

there must be a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694-95. A reasonable probability is a probability "sufficient to undermine confidence in the outcome." *Id*. at 694-95; *see also Fretwell v. Lockhart*, 506 U.S. 364, 372 (1993).

A "doubly" deferential judicial review is appropriate in analyzing ineffective assistance of counsel claims under § 2254. *See Richter*, 131 S.Ct. at 788; *Premo v. Moore*, 562 U.S. –, 131 S.Ct. 733, 740 (2011) (same). The general rule of *Strickland*, i.e., to review a defense counsel's effectiveness with great deference, gives the state courts greater leeway in reasonably applying that rule, which in turn "translates to a narrower range of decisions that are objectively unreasonable under AEDPA." *Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). On federal habeas review, "the question is not whether counsel's actions were reasonable, [but] whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Richter*, 131 S.Ct. at 788. The Court need not address the performance prong if the claim can be resolved on the ground of lack of sufficient prejudice. *Strickland*, 466 U.S. at 697.

### b. Failure to Request Unanimity Instructions

Swain argues defense counsel was ineffective in failing to request unanimity instructions in sections IV(B)(1)(b)-(e) of this Report and Recommendation. Failure to take a futile or meritless action does not constitute deficient performance. *See Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). As discussed extensively above, Swain was not entitled to unanimity instructions under California law. *See Butler*, 212 Cal. App. 4th at 426 (holding that "jurors were not required to agree on the particular misrepresentations or omissions they relied on for the convictions because that finding merely relates to the manner of committing the crime"). The California Court of Appeal reasonably concluded as much. *See Solis*, 219 F.3d at 928. Therefore, any request for such instructions would have been futile, and defense counsel's decision not to request them was not an act of deficient performance. *See Rupe v. Wood*, 93 F.3d 1434, 1445

(9th Cir. 1996); *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994).  Likewise, there is no reasonable probability a more favorable result would have occurred for Petitioner because the unanimity instructions were not available under state law.  *See Strickland*, 466 U.S. at 694-95.

Accordingly, the state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established law.  *See Williams*, 529 U.S. at 412-13.  Petitioner is not entitled to relief.

### c.  *Failure to Prepare for Trial*

Petitioner argues that defense counsel, Albert Tamayo, was not prepared for trial.  He claims Tamayo failed to adequately research the law, review the facts and investigate the case before trial.  (Pet. at 7, ECF No. 1; Pet. Ex. A at 52-55.)   He further claims defense counsel was ineffective in failing to call several witnesses to testify on his behalf, including Wendy Shafer, William Sturgeon, Patrick Valentino, Christopher Cox, Randy Grossman and other unidentified experts.  Swain raised these claims in his petition for habeas corpus to the California Supreme Court.  (Resp't Lodgment No. 9.)   After requesting and receiving an informal response from Respondent, the court denied the petition without comment or citation.  (Resp't Lodgment Nos 10–11, 13.)   Thus, this court must conduct an independent review of the record to determine whether the state court's denial of the claim was contrary to, or an unreasonable application of, clearly established law.  *See Himes*,  336 F.3d at 853.

### 1.  Background

Petitioner was initially arraigned on a complaint on June 9, 2006, at which time he had retained counsel.  (Resp't Lodgment No 1, vol. 3 at 451.)  On November 16, 2006, Swain was arraigned on an amended information.  At that time, retained counsel asked to be relieved and an attorney from the Public Defender's Office was appointed (*Id.* at 468.)  Tamayo was assigned to Petitioner's case.  (*See* Resp't Lodgment No. 1, vol. 3 at 471.)  On January 12, 2007, Swain moved to have counsel relieved and asked that he be allowed to represent himself.  The trial court granted his motion.  (*Id.* at 470.)  On

January 29, 2007, the trial court appointed a Private Conflicts Counsel Investigator to assist Petitioner. (*Id.* at 471.) On February 20, 2007, the matter was assigned to Superior Court Judge Gill, and trial call was set for May 24, 2007. On May 11, 2007, trial was reset for June 25, 2007.

On June 8, 2007, Petitioner filed a motion to continue the trial date and motion for appointment of advisory counsel. (*Id.* at 477.) On June 12, 2007, the court granted Swain's request for appointment of advisory counsel but denied the motion for continuance. (*Id.* at 479.) On June 20, 2007, Swain moved to withdraw his pro per status and have counsel appointed. The court granted the motion on June 22, 2007, and assigned the Public Defender's Office to his case.[12] Tamayo appeared at a status conference that day and trial was re-set for December 10, 2007. (*Id.* at 483.)

On October 10, 2007, the trial court denied a motion by defense counsel to continue the trial date. On December 6, 2007, Tamayo renewed his motion for continuance and it was again denied. (*Id.* at 484; *see also* Lodgment No. 2, vol. 1 at 53-54.) At the hearing, defense counsel stated:

> Well, I've tried to be ready for today's date for trial. I will state on the record that I'm not prepared to go forward. I feel that if Mr. Swain proceeds at this time, that he will be proceeding with an attorney who's simply not prepared to go to trial and does not – perhaps does not meet the level of competence that would ordinarily be met had his attorney been prepared.

(Lodgment No. 2, vol. 1 at 49.) After the trial judge denied the continuance, Tamayo added:

/ / /

> Just, again, if I'm going to trial on this case, I think it will probably be the first time I've ever gone to trial without completing investigation, unprepared and declaring that I'm not prepared.

(*Id.* at 53.) Tamayo indicated that he would not be prepared to go to trial until "sometime

---

[12] At the hearing, Petitioner requested that his advisory attorney, James Hutchins, be appointed to represent him. The trial court made it clear that if his motion was granted, the Public Defender's Office would be appointed, not Mr. Hutchins. (Resp't Lodgment No. 1, vol 1 at 38-39.)

in March, 2008." (*Id.* at 49.)

Defense counsel then filed a petition for writ of mandate with the California Court of Appeal, requesting the trial court be compelled to grant his motion for continuance. The appellate court stayed the trial pending its decision. (Resp't Lodgment No. 1, vol. 1 at 488-93.) On January 23, 2008, the Court of Appeal denied the writ, the stay was lifted and trial was set to begin January 30, 2008. (*Id.* at 495-96.) Tamayo requested a continuance on January 30, 2008. (Resp't Lodgment No. 2, vol. 2 at 99.) At the hearing, Tamayo stated:

> The fact pattern hasn't really changed much since last time we were in court on the motion to continue back in December, and I'm still not able to get the information that I sought back in December. I'm still basically in the same place that I was back in December.

(*Id.* at 97.) The trial judge denied the request. (*Id.* at 96, 99.) Immediately thereafter, Swain made a motion to have Tamayo relieved pursuant to *People v. Marsden*, 2 Cal.3d 118 (1970). (*Id.* at 124.) After a hearing, the court denied the *Marsden* motion. (*Id.* at 125.)

The first witness was called on January 31, 2008 and the state's presentation of its case proceeded until February 14, 2008. The trial recessed for a week, and resumed on February 25, 2008. (*See* Resp't Lodgment No. 1, vol. 3 at 500-29.)

The defense began presenting its case on February 26, 2008. (*See id.* at 538.) That day, while Tamayo was questioning Swain, who testified in his own defense, Tamayo sought to have several documents entered into evidence, related to development costs on the New Mexico property (also known as El Segundo). The prosecutor objected, in part because she had not had an opportunity to review the documents. Tamayo responded:
/ / /

> As I indicated to the court, I wasn't prepared to go to trial. I made that point, I think in October, December, then again in January when we first started this trial, I wasn't ready to go to trial.
>
> I had never seen these documents before. Mr. Swain brought them to me during the break when the court was on its vacation. When I got these I assumed that counsel had them. I didn't know the source of the documents.

(Resp't Lodgment No. 2, vol. 11 at 1971-72.)  During argument on the same matter the next day, defense counsel stated:

> It's just my concern that I fear that Mr. Swain is being prejudiced against in this case.  Initially, of course, but as I indicated when I, early on, indicated to the court I was not prepared to proceed to trial because I was ill-prepared.  I was prepared with reviewing the documents that the prosecution provided us, but I didn't have, as I indicated before, other documents such as the accounting, and I hadn't been able to retain experts.
>
> The concern I have here is that again Mr. Swain's being prejudiced because in lieu of the documents, there's a possibility I could do a summary as counsel suggested, but I can't do that; there's not enough time.  I just don't have that time. . . . So, again, Mr. Swain, I believe is being prejudiced by not having counsel be able to provide to the jury a full defense for this case.

(Resp't Lodgment No. 2, vol. 12 at 1989-90.)

Ultimately the trial court excluded the evidence because it was cumulative under California Penal Code section 352.[13]  (*Id.* at 1989.)  The jury started deliberations on March 3, 2008 and reached a verdict the next day.   (Resp't Lodgment No. 1, vol. 3 at 549-54.)       After trial, Tamayo filed a motion for new trial, arguing the trial court erred in denying his motion for a continuance.  (*Id.* at 225.)  In it, Tamayo again stated he had been unprepared for trial.  (*Id.* at 228-29.)  Swain then requested Tamayo be relieved as counsel and asked to represent himself.  The court granted his request and Swain argued the motion for a new trial to the court.  (*See* Resp't Lodgment No. 2, vol. 14 at 2458-60.)

In denying the motion for new trial, the court stated:

> Mr. Swain, I'm going to interrupt you because I'll be honest, I'm becoming – I'm losing patience.  The reason is that you have been found guilty by a jury of committing theft through fraud.  As part of that, if we analyze it to another type of theft situation, what you ultimately do with the ill-gotten gains really isn't the issue, and you keep coming back to this issue of if you just had more time, you, in fact, would have recouped all of the investors' money, and I'm using "investors" the way you perceive them.

---

[13]  Section 352 states:

> The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.

Cal. Penal Code § 352.

In reality, it's not any different than somebody who goes out and robs somebody and says, "I'm going to take this money and do good things with it." That doesn't eliminate the robbery; it's still a robbery. The person has still committed a crime.

You committed a crime. You committed that crime by failing to disclose material facts or stating things that were not true. You obtained, illegally, investor money or victim money, which you then started using through a variety of different scenarios not only to facilitate the continued operation of your scam; you also then started, in fact, putting some of the money into what could, in fact, become a legitimate development project in the hopes that you could pay these victims back.

The reality of it is, that's not the issue for purposes of this trial. The issue here is whether or not, in fact, you committed a crime by stealing money, by failing to properly disclose, or disclosing issues that were, in fact, not true.

I have no doubt that the jury made the right decision in this case. I will also indicate that the issue that's been presented as to the ineffective – alleged ineffective assistance of counsel by Mr. Tamayo – I believe that the assistance of Mr. Tamayo gave you was, in fact, excellent.

It was – in the situation in which he was forced to present a defense for you, notwithstanding your continued protest that all you wanted to do was go to trial in this case, and yet you wanted to make sure that you're prepared, there wasn't anything, in fact, to prepare in this situation, because the facts that were presented to the jury were fairly straightforward. You, in fact, suffered prior felony convictions that should have been disclosed. That's what the law says; that's what a number of victims said on the stand. That was material.

You suffered prior bankruptcies. That was material. The reason those types of things don't generally appear in prospectuses is because most people that are making securities offerings don't have prior felony convictions because they know that, in fact, if it was disclosed, nobody would buy it. That's part of the reason that the state legislature and the California courts have created the securities laws the way they are. That's the reason you don't see them, because most people that have felonies recognize that they're not going to be successful offering securities once they disclose the fact that they have prior felonies.

The fact that you believe that counsel gave you advice contrary to that, I frankly, Mr. Swain, believe that statement by you lacks credibility.

I'm going to state for the record that my obligation as it relates to trial is that there be a fair trial consistent with the constitution, the rights of the parties and the applicable law.

The issues raise inside it, the motion for continuance – or excuse me, the motion for a new trial, suggests that further preparation should have shown the development projects were legitimate and that investor monies was spend on those projects. However, defendant was found guilty – Defendant being you, Mr. Swain – of making false and misleading and

fraudulent statements to obtain money from trusting victims.

Whether or not the victims' money was used for developing property, furthering the scam, or the personal use of the defendant does not change the fact that Mr. Swain committed theft by false and misleading statements.

Finally, I note that Mr. Tamayo's fine legal skills and adequate preparation were noted throughout the trial and are exhibited in the record that was prepared for this trial. Mr. Swain received a fair trial with qualified counsel that understood the relevant issues and addressed them appropriately. Accordingly, the motion for a new trial is denied.

(Resp't Lodgment No. 2, vol. 14 at 2464-67.)

## 2. Analysis

Swain contends his Sixth Amendment rights were violated as a result of defense counsel's purported failure to adequately prepare for trial. Clearly, as noted above, Tamayo made statements before, during and after the trial, that he felt he was ill-prepared for Swain's trial. The trial court nonetheless found that Tamayo had provided "excellent" assistance. (*Id.* at 2467.) Defense counsel stated during trial that he had fully reviewed all of the documents provided him by the prosecutor. (Resp't Lodgment No. 2, vol. 12 at 1990.) He cross examined virtually every witness. During Swain's testimony, Tamayo was able to present evidence that Petitioner was attempting to develop the properties in question. (*See id.*, vol. 11 at 1993-2000.) In particular, he presented evidence that Swain had built two houses on the New Mexico property, and at least three other houses under construction and had potential buyers for these homes. (*Id.* vol. 10 at 1890-1901.) He also presented evidence that suggested Swain's expenditures contractors at El Segundo might have been higher than that estimated by the state's expert, Susan Tankersley. Further, Swain testified that he had no intent to defraud investors and had he been permitted to continue the projects, no investor would have lost money. Defense counsel argued that Petitioner was not running a Ponzi scheme because there were assets and there was no "windfall." (*See* Resp't Lodgment No. 2, vol. 14 at 2397-98.) Despite his statements that he was not as prepared as he would have liked to be, Tamayo showed an understanding of the relevant law and facts, throughout the trial.

Nonetheless, this Court need not decide whether defense counsel's performance

fell "outside the wide range of professionally competent assistance" because even assuming Swain can satisfy the "doubly deferential" standard imposed under AEDPA with regard to deficient performance, he is not entitled to relief because he has not established prejudice. *See Strickland*, 466 U.S. at 697; *See Richter*, 131 S.Ct. at 788.

The undisputed evidence against Petitioner was simply overwhelming. Petitioner admitted that he had prior felony convictions for grand theft and a prior bankruptcy. (Resp't Lodgment No. 2, vol. 11 at 1851, 1854.) He admitted he failed to disclose these facts to investors. (*Id.* vol. 11 at 1860-61; vol. 12 at 2017.) Nearly every victim testified that they would not have invested with Swain had these facts been disclosed to them. (*Id.* at vol. 2 at 169-70; vol. 3 at 199-200, 221, 258, 311; vol. 4 at 370, 399-400, 429-30, 448-49, 509-10, 528-29; vol. 5 at 738-39; vol. 6 at 784-85, 806-07, 828-29, 857; vol. 7 at 992-93; vol. 8 at 1242, 1374, 1431-33.) An expert in investment fraud, who was the former Enforcement Director of the Department of Corporations testified on rebuttal that bankruptcies and past convictions should be disclosed in the prospectuses. (*Id.* vol. 12 at 1269-72.)

These were not the only misrepresentations made to investors. Victims also testified they would not have invested with Petitioner had they known that interest was being paid solely by obtaining money from other investors. (*See id.* vol. 3 at 223, 311-12; vol. 4 at 373, 400-01, 431, 447-48, 511, 529; vol. 6 at 785, 807, 829, 858; vol. 8 at 1242, 1373, 1434.) There was also testimony that Swain misrepresented to investors that First Fidelity's mortgage certificates were secured by first trust deeds when, in fact, there were no trust deeds. (*Id.*, vol. 3 at 216, 272, 272; vol. 4 at 380; vol. 5 at 733; vol. 9 at 1476; vol. 10 at 1613.) There was evidence that Swain misrepresented his experience in securities and the length of time First Fidelity had been in business. (*See id.* vol. 4 at 372, 393-394; vol. 6 at 838, 961-964.) There was evidence, particularly related to his prior convictions, that Swain acted with common plan or scheme to commit fraud. (*See* Resp't Lodgment No. 1340, 1395; vol. 9 at 1443, 1455; *see also* Resp't Lodgment No. 1, vol. 2 at 19-53.)

Swain argues that he was prejudiced by defense counsel's failure to adequately rebut this evidence. He asserts defense counsel failed to call witnesses and present evidence that would have shown that failure to disclose prior convictions and bankruptcy were not material, and that he reasonably believed that he had no obligation to disclose that information. Further, he claims defense counsel should have called witnesses to establish that the project in New Mexico was ongoing at the time of his arrest. Specifically, he argues Tamayo should have called Wendy Shafer, who was briefly his accountant. (Pet., Ex. A at 54, ECF No. 1-1.) In addition, he should have called William Sturgeon, a forensic accountant, who would have testified that there was "no theft." (*Id.* at 56.) He also claims attorneys Patrick Valentino, Christopher Cox, and Randy Grossman should have been called to testify. Tamayo should have presented expert testimony that "reasonable men" would not consider past convictions "material." (*See id.* at 59, 64-66.) Finally, defense counsel should have called witnesses who could establish the foundation for the admission of evidence related to construction expenditures in New Mexico. (*See* Traverse at 4, ECF No. 34-1.)

First, Swain claims Wendy Shafer would have testified that the his company was viable and that she found no evidence that he was taking any money. (Pet., Ex. A at 57, ECF No. 1-1; Traverse at 4, ECF No. 34.) For support, he attaches two letters Shafer wrote to the trial judge before Swain's sentencing, in which she states that she assisted Swain with his payroll, books and tax returns in the 2-3 months prior to Swain's arrest (after Swain's previous accountant, Victoria Wright, quit). Shafer does state in the letters that she believed the New Mexico project was a "money making situation" and would have generated profits. She also states, however, that she understood that Swain had prior convictions and should have disclosed them to investors. (Pet., Ex. 1-C, at 28-29, ECF No. 1-2.) Given Shafer's letter there is no reasonable probability had she testified, the result would have been different. *See Richter*, 131 S.Ct. at 792. Nothing in her letters suggests she had relevant knowledge of the business but for the few months before Swain's arrest. As the trial judge noted, that there was some development of the New

Mexico property was not disputed by the prosecution (although there was some dispute about how much Swain had spent on construction). The prosecution's own forensic accountant also testified that there was no evidence of monies "hidden" in any way and no evidence monies had been transferred to offshore accounts. (Resp't Lodgment No. 2, vol. 10 at 1732-33, 1753.) That was not the issue, however. The issue was whether Swain knowingly made material misrepresentations or omissions to investors in order to get them to invest money with him. Shafer admits that Petitioner "should have disclosed his convictions to investors." (Pet., Ex. 1-C at 29, ECF No. 1-2.) Thus, there is no reasonable probability that her testimony would not have affected the outcome of the case. The state court's denial of the claim was not an unreasonable application of *Strickland*'s prejudice prong.

Petitioner has not shown failure to call William Sturgeon to testify was prejudicial. He claims Sturgeon was a forensic accountant who would have testified there "were no missing funds and that there was no theft." (Pet., Ex. A at 56, ECF No. 1-1.) Swain offers nothing other than his own conclusory allegations that Sturgeon would have so testified. Unsupported conclusory allegations are insufficient to demonstrate *Strickland* prejudice. *See James*, 24 F.3d at 26; *see also Gonzalez v. Knowles*, 515 F.3d 1006, 1015–16 (9th Cir. 2008) (speculative allegations do not establish *Strickland* prejudice); *Wildman v. Johnson*, 261 F.3d 832, 839 (9th Cir. 2001) (no prejudice from counsel's failure to retain an expert where no offer of proof detailing facts to which such expert would have testified at trial); *Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997) (same). Again, the prosecutor conceded that there was no evidence Swain attempted to "hide" money. (Resp't Lodgment No. 2, vol. 10 at 1732-33, 1753.) Moreover, as discussed above, short of testifying that failure to disclose prior felony theft convictions to investors would not be "material" to reasonable person, there is no reasonable probability the outcome would have been different had Sturgeon testified. The state court's denial of this claim was not an unreasonable application of clearly established law under *Strickland*.

Petitioner claims Patrick Valentino, who was, at some point, a securities attorney for Swain, would have testified that he never advised Swain that he was required to disclose his prior conviction or bankruptcy. (*See* Pet., Ex. A at 59, 66.) He attaches a letter from Valentino to the Department of Corporations, in response to the Department's inquiry concerning First Fidelity. In it, Valentino merely states that he was retained to assist First Fidelity in "compliance matters." (Pet., Ex. 1-D at 34, ECF No. 34.) There is nothing to suggest that Valentino knew of Swain's prior criminal history or bankruptcy, or that he advised him that these facts were not material. Swain's self-serving conclusory allegations are insufficient to show prejudice. *See Gonzalez v. Knowles*, 515 F.3d at 1015-16 In addition, it is notable that the *prosecution* attempted to call Valentino to testify at trial as a rebuttal witness, arguing that Swain had waived attorney client privilege by suggesting he was acting on advice from attorneys when he failed to disclose his prior convictions and bankruptcy. Tamayo successfully argued that Swain had not waived his privilege. There was some suggestion from the prosecutor that Valentino was not retained until late 2005 and he did not assist in the drafting of the prospectuses. (*See* Lodgment No. 2, vol. 12 at 1980-82, 2190.) There is therefore nothing to suggest Valentino would have provided testimony helpful to Swain's defense and some possibility that his testimony might have even hurt the defense. Accordingly, it was not unreasonable to conclude that Tamayo's failure to call Valentino as a witness for the defense was not prejudicial under *Strickland*.

Similarly, Petitioner cannot show failure to call Randy Grossman to testify was prejudicial. Grossman represented Petitioner at the beginning of the criminal proceedings. Swain alleges Grossman advised him that the "Desist and Refrain Order" from the California Department of Corporations did not prohibit him from continuing development on the New Mexico property or from soliciting investors for that project. (Pet., Ex. A at 55, ECF No. 1-1.) Again, Petitioner offers nothing but his own conclusory allegations that Grossman would testify that he gave Swain that advice. In addition,

Swain was not convicted for violating the "Desist and Refrain Order."[14]   He was convicted for making material misrepresentations to investors, theft by false pretense and for offering fraudulent securities schemes.  There is no evidence to suggest that Grossman would have testified that he advised Swain that his prior history was not material. It does not appear that Swain even had a relationship at the time the misleading prospectuses were drafted.

Petitioner's claim regarding attorney Christopher Cox suffers from the same problems.  Swain asserts Cox was securities counsel for a CEMCO Oil Corporation, a company Petitioner testified he was involved with in the 1980s.  (*See* Lodgment No. 2, vol. 11 at 1853.)  He alleges Cox would have testified that he advised Swain that it was not necessary for the company (CEMCO) to disclose in its prospectus that a partner, named Charles Ed Miller, had a criminal conviction.  (Pet., Ex. A at 66, ECF No. 1-1.)  Aside from Swain's own conclusory allegations about something that purportedly occurred decades prior, there is no evidence to suggest that Cox could or would have testified as Swain alleges.  Thus, it was not unreasonable for the state court to conclude that Petitioner had failed to show a reasonable probability that the outcome would have been different had Tamayo called Cox to testify.  *See Gonzalez*, 515 F.3d at 1015-16. / / /

Petitioner contends he was prejudiced by defense counsel's failure to call an expert to testify that the information he provided to the investors met the industry standard, and that reasonable investors do not consider "financial or legal worthiness" of the parties to be "material."  (Pet., Ex. A at 70-73, 75; *see also* Traverse at 20-21, ECF No. 34.) Petitioner merely speculates that a qualified expert would have been available and willing

---

[14]  After the Refrain and Desist Order, Swain received investments from Richard Furtado and Terry and Ramona Hemming by way of section 1031 exchanges. (Resp't Lodgment No. 2, vol. 5 at 650, 653-55; vol. 7 at 1113-114, vol. 8 at 1236-37.  Section 1031 of the Internal Revenue Code permits owners of investment property to defer the capital gains tax that would otherwise be due and owing upon sale, conditioned upon timely application of the sale proceeds to the purchase of an identified replacement investment property. Money invested by Furtado ($405,515.62) was deposited in an E-Trade account (*id.*, vol. 10 at 1685, 1688) and the Hemmings money ($298,387.51) was deposited into a newly opened personal account in Swain's name.  (*Id.* at 1690-92.)

to testify that his prior felony theft convictions and bankruptcy (and other misrepresentations) were not material to reasonable investors. In *Wildman v. Johnson*, 261 F.3d 832, 839 (9th Cir. 2001), the Ninth Circuit rejected a similar claim of prejudice based on counsel's failure to retain an expert. The court stated:

> Wildman has not shown that his case was prejudiced as a result of not retaining an arson expert. Wildman offered no evidence that an arson expert would have testified on his behalf at trial. He merely speculates that such an expert could be found. Such speculation, however, is insufficient to establish prejudice. *See Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997) (speculating as to what expert would say is not enough to establish prejudice).

*Wildman*, 261 F.3d at 839. Accordingly, like the petitioner in *Wildman*, Swain claims are insufficient to show prejudice.

In addition, he claims counsel should have called an expert to testify his company was not a Ponzi scheme. Again, Petitioner does nothing more than speculate that such an expert could have been located. In addition, at trial Swain did not deny the investors received interest payments from an "interest reserve" that was generated from monies received from other investors. (*See* Resp't Lodgment No. 2, vol. 12 at 2125.) Therefore, it is reasonable to conclude that Swain had not shown a reasonable probability that he was prejudiced by any failure to call such an expert witness. *See Wildman*, 261 F.3d at 839.

Swain argues he was prejudiced by Tamayo's failure to call witnesses to testify as to the work done at the El Segundo project site in New Mexico. He states that two model homes had been completed, a third was under construction, additional lots had been graded. This evidence was not disputed by the prosecution. (*See* Resp't Lodgment No. 2, vol. 10 at 1645-46.) Defense counsel elicited evidence related to the development of the El Segundo property on both cross examination of witnesses (*see e.g., id.*, vol. 5 at 677-81) and from Swain on direct. (*Id.*, vol. 11 at 1890-1900.) He also introduced some evidence that Petitioner may have expended more in developing the property than prosecution experts estimated. (*See e.g., id.*, vol. 11 at 1994-2002.) Ultimately however, Petitioner's convictions were supported by overwhelming evidence of his material misrepresentations to investors and fraud. Based on an independent review of the record,

it was not unreasonable to conclude that Petitioner failed to show the outcome of the proceedings would have been different.  The state court's denial of this claim was neither contrary to, nor an unreasonable application of, *Strickland*.

Finally, Petitioner argues that his case falls under a narrow exception to *Strickland's* holding that a defendant must show his attorney's deficiency prejudiced the defense, set forth in *United States v. Cronic*, 466 U.S. 648 (1984).  (Pet. Ex. A at 63, ECF No. 1-1.)  In *Cronic*, the Court held that a Sixth Amendment violation may be found "without inquiring into counsel's actual performance or requiring the defendant to show the effect it had on trial," where the "circumstances . . . are 'so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified.'"  *Bell v. Cone*, 535 U.S. 685, 695 (2002) (quoting *Cronic*, 466 U.S. at 658-59).  The Court identified three examples: (1) "complete denial of counsel," (2) where counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing," and (3) "when although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate."  *Cronic*, 466 U.S. at 659-60.  Here, Petitioner appears to argue that defense counsel failed to provide "meaningful adversarial testing" under *Cronic*.  For prejudice to be presumed, however, counsel's failure must be complete.  *See Bell v. Cone*, 535 U.S. 685, 696-98 (2002).  As discussed above, defense counsel cross-examined virtually all of the witnesses, presented witnesses in defense, offered evidence, elicited favorable testimony, and presented a coherent albeit ultimately unsuccessful defense in closing argument.  Thus, *Cronic* does not apply to Petitioner's case.

In conclusion, having conducted a thorough independent review of the record, the Court finds the state court's denial of Swain's ineffective assistance of counsel claim was neither contrary to, nor an unreasonable application of, clearly established law.  *See Himes*,  336 F.3d at 853.  Swain is not entitled to relief as to claim four.

**5.    Ineffective Assistance of Appellate Counsel**

Swain next argues that he received ineffective assistance of appellate counsel in violation of his Sixth Amendment rights. (Pet. at 10, ECF No. 1.) He states appellate counsel should have raised claims of ineffective assistance of trial counsel, improper jury instructions on the elements of the offenses, and outrageous government misconduct on appeal. (*Id*.) Petitioner raised this claim in his petition for habeas corpus to the California Supreme Court. (Resp't Lodgment No. 9.) Respondent filed an informal response to the petition at the court's request. (Resp't Lodgment Nos. 10, 11.) The California Supreme Court then denied the petition without comment or citation. (Resp't Lodgment No. 13.) Thus, because there is no reasoned state court decision, this Court must conduct an independent review of the record to determine whether the state court's denial of the claim was contrary to, or an unreasonable application of, clearly established law. *See Himes*, 336 F.3d at 853.

It is clearly established that "[t]he proper standard for evaluating [a] claim that appellate counsel was ineffective . . . is that enunciated in *Strickland*." *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (citing *Smith v. Murray*, 477 U.S. 527, 535-36 (1986)). A petitioner must first show that his appellate counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. Specifically, Swain must show that appellate counsel "unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them." *Smith*, 528 U.S. at 285. He must then show she was prejudiced by counsel's errors. *Strickland*, 466 U.S. at 694. To establish prejudice, Petitioner must demonstrate that he would have prevailed on appeal absent counsel's errors. *Smith*, 528 U.S. at 285.

/ / /

The Ninth Circuit has observed that:

[Strickland's] two prongs partially overlap when evaluating the performance of appellate counsel. In many instances, appellate counsel will fail to raise an issue because she foresees little or no likelihood of success on that issue; indeed, the weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy. . . . Appellate counsel will therefore frequently remain above an objective standard of competence (prong one) and have caused her client no prejudice (prong two) for the same reason-because she declined to raise a weak issue.

*Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989).

As discussed at length in section IV(B)(4)(c) of this Report and Recommendation, the Court has already found that Swain has not established prejudice as to his ineffective assistance of trial counsel claim. It follows that any claim for ineffective assistance of appellate counsel based on a meritless and unsuccessful claim of ineffective assistance of trial counsel must also fail. *See Rupe v. Wood*, 93 F. 3d 1434, 1445 (9th Cir. 1996). Appellate counsel's failure to raise it cannot constitute ineffective assistance. *See Miller*, 882 F.2d at 1434.

Furthermore, appellate counsel is not required to raise every non-frivolous issue desired by defendant. *Jones*, 463 U.S. 745, 751-54 (1983). The California Supreme Court reviewed the merits of Swain's ineffective assistance of trial counsel claim and denied it. *See Johnson*, 133 S. Ct. at 1094 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.'") Thus, he cannot show that he would have prevailed on appeal. Because Petitioner suffered no prejudice from trial counsel's failure to raise these claims, appellate counsel's failure to raise the same claims cannot be held to have been deficient. *Id.*

Likewise, as discussed in section IV(B)(3) of this Report and Recommendation, the jury was properly instructed under California law as to the elements of California Corporations Code sections 24501, 25540 and 25541. The instructions provided the jury were consistent with the language of the relevant statutes. *See Estrada*, 11 Cal. 4th at 574-75. As such, appellate counsel's decision not to raise those claims on appeal was neither unreasonable, nor prejudicial. *Miller*, 882 F.2d at 1434.

Finally, Swain has not shown appellate counsel was ineffective in failing to raise a claim of "outrageous government misconduct." For the reasons discussed below in section IV(B)(6) of this Report and Recommendation, Petitioner's claims related to ground six are without merit and accordingly, failure to present them on appeal were

neither deficient performance, nor prejudicial.  *Id.*

In sum, the state court's denial of Swain's ineffective assistance of counsel claim was neither contrary to, nor an unreasonable application of, clearly established law.  *See Himes*, 336 F.3d at 853; 28 U.S.C. § 2254(d)(1).  Swain is not entitled to relief as to this claim.

### 6.    Outrageous Government Misconduct

In claim six, Petitioner argues his due process rights were violated as result of "outrageous government misconduct." (Pet. At 11, ECF No. 1.)  He argues the Superior Court, the Attorney General's Office, the Public Defender's Office and California law enforcement conspired together to deny him due process and equal protection. (*Id.*)  He claims the prosecutor other government officials hid exculpatory evidence, illegally seized assets and failed to protect those assets. (Pet. "Claim IV" at 3, ECF No. 1-2.)  He also claims the prosecutor conspired to convict him only because he had a criminal history. (*Id.* at 14.)  He also argues the trial judge refused to grant him a continuance and conspired to deprive him of effective counsel. (*Id.* at 5.)  He asserts that he was deprived adequate financial resources to hire experts and defend his case.  (*Id.* at 11-13.)

First, as Respondent states, in *United States v. Russell*, 411 U.S. 423, 431-32 (1973), the Supreme Court suggested *in dicta* that outrageous government conduct in a sting operation may give rise to a due process defense.  Because there is no clearly established precedent establishing a due process claim based on "outrageous government conduct," California's denial of the claim is not contrary to, nor an unreasonable application of, clearly established law. *See Carey*, 549 U.S. at 7; *see also Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004) ("If no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law.")

Second, to the extent Swain rehashes arguments regarding Tamayo's performance as trial counsel, those claims have been addressed in full and denied in section IV(B)(4(c)

of this Report and Recommendation.

Third, to the extent Swain's claims related to the prosecutor can be liberally construed as allegations of prosecutorial misconduct, he is not entitled to relief. Government misconduct rises to the level of a constitutional violation only where it "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); accord *Darden v. Wainwright*, 477 U.S. 168, 181 (1986); *Drayden v. White*, 232 F.3d 704, 713 (9th Cir. 2000). Thus, "prosecutorial misconduct violates due process only if evidence is presented which 'taken as a whole' gives a jury a 'false impression.'" *Downs v. Hoyt*, 232 F.3d 1031, 1038 (9th Cir. 2000) (quoting *Alcorta v. Texas*, 355 U.S. 28, 31 (1957) (per curiam )). Further, any demonstrated prosecutorial misconduct amounting to constitutional error is subject to the *Brecht* harmless-error standard. *See Karis v. Calderon*, 283 F.3d 1117, 1128-29 (9th Cir. 2002).

Swain argues the prosecutor hid exculpatory evidence, apparently by failing to seize the contents of the New Mexico offices. A prosecutor's failure to disclose favorable evidence to an accused "violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). To establish that the government's failure to turn over evidence violates *Brady*, Swain must demonstrate (1) the evidence was suppressed by the government either willfully or inadvertently; (2) the evidence was favorable to the accused because it was either exculpatory or impeaching;

/ / /

and (3) prejudice resulted from the failure to disclose. *See Strickler v. Greene*, 527 U.S. 263, 280-81 (1999).

Here, Swain fails to satisfy any of the *Brady* requirements. First, his claim that the prosecutor deliberately declined to seize records and computers at the New Mexico site where he was arrested does not amount to willful or even inadvertent suppression of evidence. Moreover, Petitioner offers nothing but conclusory allegations and vague

speculation as to how the evidence would have been favorable to his defense. He merely suggests there would have been evidence that the El Segundo project was being developed and would have been successful had the state not intervened. For the same reason, he has not shown how he was prejudiced as a result of any purported suppression. Finally, nothing prevented Swain or his counsel from retrieving the evidence if it was, in fact, favorable to the defense. Indeed, when Swain was representing himself, the trial court permitted him to travel to New Mexico to retrieve documents. (*See* Lodgment No. 2, vol. 12 at 1990-91.)

Swain has not established that the prosecutor and government officials failed to preserve or destroyed exculpatory evidence. He appears to argue that because his assets were frozen, the prosecutor was responsible for safeguarding his property and whatever evidence might have been contained there. He again presents nothing more than vague, conclusory allegations that there may have been evidence at the New Mexico property that the prosecutor failed to seize and was somehow lost as a result. The vague assertions are insufficient to support a due process claim. *See James*, 24 F.3d at 26. Regardless, unless Petitioner "can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988). A finding of bad faith depends upon the police officer's (or prosecutor's) knowledge of the exculpatory value of the evidence at the time of its destruction. *Youngblood*, 488 U.S. at 56. Swain has not made such a showing of bad faith here.

///

Petitioner also argues the prosecutor committed misconduct by pursuing charges against him only because he had suffered prior convictions. The Supreme Court has made clear that prosecutors possess wide discretion in deciding "whether or not to prosecute, and what charges to bring or file . . . ." *Wayte v. United States*, 470 U.S. 598, 607 (1985). The prosecutor's mere exercise of "'some selectivity in enforcement is not in itself a federal constitutional violation' so long as 'the selection was [not] deliberately

based upon an unjustifiable standard such as race, religion, or other arbitrary classification.'" *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) (quoting *Oyler v. Boles*, 368 U.S. 448, 456 (1962)). Petitioner does not allege any such "unjustifiable standard."

Fourth and finally, to the extent Petitioner's allegations related to the trial judge can be liberally construed judicial misconduct claim, he is not entitled to relief. "[T]he floor established by the Due Process Clause clearly requires a 'fair trial in a fair tribunal,' before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997) (internal citation omitted). The trial judge must "avoid even the appearance of advocacy or partiality." *Duckett v. Godinez*, 67 F.3d 734, 739 (9th Cir. 1995) (internal quotation marks and citation omitted). A claim of judicial misconduct by a state judge in the context of federal habeas review does not simply require that the federal court determine whether the state judge committed judicial misconduct; rather, the question is whether the state judge's behavior "rendered the trial so fundamentally unfair as to violate federal due process under the United States Constitution." *Id.* at 740. A state judge's conduct must be significantly adverse to a defendant before it violates constitutional requirements of due process and warrants federal intervention. *Id.*

Swain appears to argue that the trial judge's denial of his defense counsel's motion for a continuance was based on bias and therefore violated his due process rights. In general, "[t]rial judges necessarily require a great deal of latitude in scheduling trials." *Morris v. Slappy*, 461 U.S. 1, 11-12, 103 (1983). In that regard, "broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the assistance of counsel." *Id.* (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964)). "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time

the request is denied." *Ungar*, 376 U.S. at 589-90 (citations omitted); *see also Houston v. Schomig*, 533 F.3d 1076, 1079 (9th Cir. 2008); *Morris v. Blackletter*, 525 F.3d 890, 894-98 (9th Cir. 2008). Additionally, even if the continuance was improperly denied, habeas relief is not available unless there is a showing of actual prejudice to petitioner's defense resulting from the refusal to grant a continuance. *See Gallego v. McDaniel*, 124 F.3d 1065, 1072 (9th Cir. 1997); *see also United States v. Kloehn*, 620 F.3d 1122, 1130 (9th Cir. 2010) ("An arbitrary denial of a continuance is subject to the harmless error test.")

Here, the trial judge denied defense counsel's first request for continuance of the December 10, 2007 trial date on October 5, 2007. The judge stated, in part:

> Mr. Tamayo, I'll indicate that I believe your characterization of the need to review the documents is accurate. What I'm indicating is, this case, because of the time frames we're in, with two months left [until trial], I believe there's adequate time to do what you're indicating. . . . I believe there is enough time to prepare this case. I believe that the interest of the people have to be taken into consideration, particularly in light of the fact that there are elders as alleged victims here and that is to take precedence over other cases.

(Resp't Lodgment No. 2, vol. 1 at 8.) Likewise, when denying Tamayo's December 6 request for a continuance the judge again stated:

> I am not swayed by issues as it relates, possibly to all of the defense evidence because there's been more than adequate time, both from Mr. Swain's own representation, the representation of other counsel, as well as the Public Defender's representation since June 22 of this year, in order for evidence to be accumulated and reviewed for purposes of trial.

(*Id.* at 52.) Finally, when denying defense counsel's final request for a continuance on January 30, 2008, the judge again stated that he believed counsel had enough time to prepare, particularly in light of the additional time the trial had been delayed as a result of the stay. (Resp't Lodgment No. 2, vol. 2 at 99.) The prosecutor also noted that in addition to the two witnesses that had passed away while the case was pending, an elderly witness had recently suffered a stroke. She argued that a continuance would have a "significant impact on the witnesses and victims in this case." (*Id.* at 98.)

The court's denial of the continuances was not arbitrary. As the judge noted, the

case involved numerous elderly victims, two of whom died while the case was pending. (*See* Lodgment No. 1, vol. 1 at 26; vol. 10 at 1604.)  Defense counsel had nearly six months to prepare for trial from the time he was reassigned the case in June 2007.  The charges had been pending since June 2006.  (*See* Resp't Lodgment No. 1, vol. 3 at 451.) Further, despite the denial of this October and December requests for continuances of the December 10, 2007 trial date, the trial did not begin until January 30, 2008, giving counsel and nearly an additional two months to prepare.  Accordingly, in light of the circumstances, the state court's denial of the requests for a continuance were not contrary to, nor an unreasonable application of, clearly established law. *See Slappy*, 461 U.S. at 14 ("In the administration of criminal justice, courts may not ignore the concerns of the victims.")

Finally, Swain claims he was denied adequate and "equal" resources to those the state expended in prosecuting him, in violation of due process, equal protection. (*See* Pet., "Claim IV" at 14-15, ECF No. 1-2.)  He alleges the prosecution, the court and defense counsel participated in a conspiracy to convict him by denying him resources for his defense. (*Id.* at 14.)  Swain's offers nothing to support his allegations other than wild speculation.  Furthermore, neither due process nor equal protection requires that the state equalize the resources of the indigent and the wealthy defendant. *See Ross v. Moffitt*, 417 U.S. 600, 616 (1974).

In sum, having conducted a thorough independent review of the record, the Court finds that the state court's denial of Swain's "outrageous government misconduct" claim was neither contrary to, nor an unreasonable application of, clearly established federal law. *See Himes*,  336 F.3d at 853; *see also* 28 U.S.C. § 2254(d).  Petitioner is not entitled to relief as to ground six.

### 7.    Actual Innocence

Finally, Swain argues he is actually innocent of committing the charged crimes. (Pet. At 12, ECF No. 1.)  Because California Supreme Court denied this claim without comment or citation (*see* Resp't Lodgment No. 13), this Court must conduct an

independent review of the record to determine whether the denial was contrary to, or an unreasonable application of, clearly established law. *See Himes*, 336 F.3d at 853.

Whether a freestanding innocence claim is cognizable under federal law is an "open question." *District Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 71 (2009). Even assuming such a claim is cognizable on federal habeas, the burden of proof for such a claim is "extraordinarily high." *Carriger v. Stewart*, 132 F.3d 463, 476 (9th Cir. 1997). "A habeas petitioner asserting a freestanding innocence claim must go beyond demonstrating doubt about his guilt and must affirmatively prove that he is probably innocent." *Id.* (citing *Herrara*, 506 U.S. at 442-44). An actual innocence claim must be based on "new reliable evidence" not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *see also Shumway v. Payne*, 223 F.3d 982, 990 (9th Cir. 2000).

First, Petitioner is not entitled to relief because the United States Supreme Court has expressly left open the question of whether a freestanding actual innocence claim based on newly discovered evidence constitutes grounds for habeas relief in a non-capital case.[15] In the absence of Supreme Court authority establishing the cognizability of a freestanding actual innocence claim on federal habeas review, the California Supreme Court's rejection of Petitioner's claim could not be contrary to, or involve an unreasonable application of, "clearly established" Supreme Court authority. *See Carey*, 549 U.S. at 77; *see also Brewer*, 378 F.3d at 955 ("If no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law.")

Second, even assuming his claim is cognizable on federal habeas review, he is not entitled to relief because he offers no "reliable new evidence" to support his claim. His evidence consists primarily of his own self-serving declarations. In essence, Swain's

---

[15] Petitioner also argues that because he is actually innocent "any procedural default cannot be used to deny him the right to have his habeas claim heard on the merits." (Pet., "Claim IV" at 17, ECF No. 1-2.) The Court notes that Respondent concedes none of Swains claims are procedurally defaulted. (*See* Answer at 30.)

arguments as to this claim are merely a rehash of the claims discussed and rejected above in sections IV(B)(1)-(4) of this Report and Recommendation. Petitioner has not met the extraordinarily high standard to show that he is "probably innocent." *Carriger*, 132 F.3d at 476.

Accordingly, the state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established law. *See Himes*, 336 F.3d at 853; 28 U.S.C. §2254(d) Swain is therefore not entitled to relief. .

## V.   **CONCLUSION**

The Court submits this Report and Recommendation to United States District Judge Marilyn L. Huff under 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(d)(4) of the United States District Court for the Southern District of California. For the reasons outlined above, **IT IS HEREBY RECOMMENDED** that the Court issue an order: (1) approving and adopting this Report and Recommendation, and (2) **DENYING** the Petition for Writ of Habeas Corpus.

**IT IS ORDERED** that no later than September 23, 2013 any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than October 4, 2013. The parties are advised

/ / /

/ / /

that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

**IT IS SO ORDERED.**

DATE: <u>September 6, 2013</u>

Peter C. Lewis
U.S. Magistrate Judge
United States District Court